Rudolph Valle **TORRES**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1800.

Supreme Court of Alaska.

March 15, 1974.

Herbert D. Soll, Public Defender and Susan Burke, Asst. Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Monroe N. Clayton, Dist. Atty., James M.

Hackett, Asst. Dist. Atty., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

FITZGERALD, Justice.

On the morning of November 3, 1971, eight year old Doretha Amouak was fast asleep in the children's bedroom of the family apartment in Fairbanks, Alaska. Her invalid mother and two sisters were sleeping in an adjoining bedroom. Another sister was sleeping on the living room couch. The door to the apartment had been left unlocked, since Doretha's father, Frank Amouak, worked irregular hours as a janitor. Shortly after 6:00 a. m., Doretha was awakened by a man kneeling beside her bed. She was unable to cry out since the intruder placed his hand across her mouth. He removed her pants and roughly pulled down her panties. The panties were allegedly torn. He told her to be quiet and that "it'll be done in a minute." The man laid on top of her attempting sexual intercourse and after a short time she felt a stickiness on her legs. As soon as the man released her, Doretha got up, dressed herself, and went straight to her mother's bedroom.

When Mrs. Lena Amouak awakened, Doretha was standing in the doorway saying, "Mommy, mommy, a stranger." Mrs. Amouak saw the appellant, Rudolph Valle Torres, standing behind Doretha. Alarmed and frightened, Mrs. Amouak began to scream. The appellant queried her regarding Mr. Amouak's whereabouts and Mrs. Amouak responded by saying that he would return shortly. She continued to scream and called for her neighbors' assistance. Appellant pleaded, "Don't do that, Miss Frank"; since Mrs. Amouak continued to scream, he turned away and left the apartment. Mrs. Amouak then told her daughter, Valerie, to lock the door and call the police.

The police received the call at 6:26 a. m., and police officer Kenneth Keber reached the Amouak apartment at 6:29 a. m. At the time he entered, Officer Keber observed a great deal of confusion. The four little girls were crying and all were trying to talk at the same time. Doretha appeared emotionally upset and ran back and forth between the officer and Mrs. Amouak. Immediately after the arrival of the officer, Doretha told her mother, outside the presence of the police officer, that the stranger had "fucked" her. Mrs. Amouak asked if this was true and Doretha responded, "Yes, he even tore my panties." Mrs. Amouak immediately informed Officer Keber. Whereupon, the officer asked Doretha to remove the panties so that they might be held as evidence. Subsequently, Doretha was taken to the emergency room of a nearby hospital where she was examined by a doctor who detected the presence of male sperm.

At the trial, the assistant district attorney, in the state's opening statement, outlined for the court and jury the evidence which he intended to present. He referred to previous contacts by the appellant involving Doretha and her sister, Valerie. Immediately following the state's opening presentation, Torres' attorney objected to mention of other incidents on the grounds that evidence of previous misconduct by the appellant was inadmissible and prejudicial. The attorney moved for a mistrial but the trial judge reserved decision on the matter and the trial continued. After several witnesses had testified, the trial judge took up the reserved question and decided that evidence of any previous misconduct by appellant toward Doretha and her sister was inadmissible for lack of probative value. The trial judge declared a mistrial stating he did so in the interest of fairness, since reference had been made to inadmissible evidence in the state's opening statement. The case was promptly reassigned to another judge and over appellant's objections a new jury was selected and the trial was completed. Appellant was found

guilty of lewd and lascivious conduct upon the person of Doretha Amouak; the imposition of sentence followed and now he appeals.

In his appeal appellant contends that prosecutorial misconduct leading to a declaration of a mistrial is a bar to further prosecution under the prohibition against double jeopardy.[1] In addition, appellant contends that the testimony of statements made by Doretha to her mother amounted to prejudicial hearsay and was reversible error. Appellant also claims that the trial court erred in denying appellant's motion to dismiss the indictment or alternatively to preclude the state from introducing evidence regarding Doretha's panties because the police custodian as a result of a mix up destroyed them before trial.

## I.

■ Appellant alleges that the declaration of a mistrial and the subsequent reprosecution of Torres violated the prohibition against double jeopardy. The defendant in a criminal jury trial is placed in jeopardy as soon as the jury is sworn.[2] As a general rule, when a trial is terminated due to a manifest necessity, the defendant's interest in having a particular jury determine his fate is subordinated to the public interest in securing fair trials designed to end in fair judgments.[3] This principle has been recognized in instances where the jury is unable to reach a verdict,[4] or where jurors become disqualified or ill prior to reaching a verdict.[5] Moreover, a defendant may waive his constitu-

tional right of double jeopardy by consenting to the discharge of a jury.[6] However, the defendant's consent will not operate in all instances as a waiver of his constitutional right even if there is a manifest necessity to prematurely terminate trial court proceedings. In Muller v. State, 478 P.2d 822, 827 (Alaska 1971) this court acknowledged an exception to the general rule:

> [I]n cases where it is clear that the prosecutor, motivated by a desire to avoid an acquittal in a case which is going badly, engages in purposeful misconduct which forces the court to declare a mistrial, the policy of protecting an accused individual from harassment by consecutive prosecution may demand that a retrial be barred, even though the mistrial was manifestly necessary. (footnote omitted)

■ Under *Muller* in order for prosecutorial misconduct to justify a mistrial, thereby precluding further prosecution, the conduct must be designed to avoid an acquittal when the prosecution's case is going badly.

■ A review of the trial transcript before us does not reveal any prosecutorial misconduct designed to avoid an acquittal upon recognition that the state's case was going badly. At the time the defense application for mistrial was granted, the prosecution had just begun to question its first important witness. In point of fact the victim, the prosecution's chief witness, had not yet testified. We find that the

---

1. Appellants do not specify which double jeopardy clause they rely on. Alaska Const., Art. I, § 9 provides:

 No person shall be put in jeopardy twice for the same offense. No person shall be compelled in any criminal proceeding to be a witness against himself.

 U.S.Const., amend. V provides in part:

 [N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . .

2. Selman v. State, 406 P.2d 181, 186 (Alaska 1965):

 The authorities are well settled that a defendant is considered to have been placed

in jeopardy as soon as he has gone to trial and the jury sworn. . . . If the jury is discharged with his consent, he may be tried again. (footnote omitted)

3. Wade v. Hunter, 336 U.S. 684, 688–689, 69 S.Ct. 834, 836–837, 93 L.Ed. 974, 978 (1949).

4. *See* Koehler v. State, 519 P.2d 442 (Alaska 1974).

5. Lewis v. State, 452 P.2d 892, 894–95 (Alaska 1969).

6. Selman v. State, 406 P.2d at 186.

trial judge was correct in allowing the appellant to be tried following the mistrial.

## II.

After the state's opening presentation in the second trial, the defense applied for an order based on hearsay grounds precluding any testimony reciting Doretha's statements to her mother on the morning of November 3rd. The application was denied since the trial judge at that point indicated that he would await development of the issues before making any evidentiary rulings. He cautioned the defense, however, to make objections at the appropriate time.

The evidence of the hearsay statement first came in during cross-examination of Doretha by the defense. Subsequently, the prosecution during the direct examination of Mrs. Amouak sought to introduce the same hearsay statement, when defense counsel objected to the statement's admission into evidence. Although defense counsel first introduced the statement, "[a]s a general rule, the mere fact of the introduction of improper evidence by one party, at least if given without objection by the other party, does not justify the introduction of similar evidence by such other party." [7] Thus, defense counsel's objection was both timely and proper for preserving the hearsay issue on appeal. However, as pointed out below, the lower court properly ruled that the statement by Mrs. Amouak was admissible under the spontaneous exclamation exception to the hearsay rule. Even assuming that the trial court's admission of the statement was error, appellant's argument that this constitutes reversible error is without merit since any prejudicial effect was initially caused by defense counsel during his cross-examination of Doretha.

As a general rule hearsay evidence is incompetent and inadmissible. Jefferson v. City of Anchorage, 374 P.2d 241,

242–243 (Alaska 1962). In this instance the state sought to introduce the statement based on the spontaneous exclamation exception to the hearsay rule. This court in Watson v. State, 387 P.2d 289 (Alaska 1963), reviewed the criteria for the admission of such statements under this exception. In *Watson,* the jury found the defendant guilty of second degree murder. On appeal Watson contended that the admission of a statement made by his wife upon learning of the death of the victim was reversible error. The wife in this instance did not have any personal knowledge of the incident. In holding that the admission of this statement was reversible error, we set forth the parameters of the spontaneous exclamation exception to the hearsay rule.

> In order for a spontaneous statement to be admissible under this exception to the hearsay rule it must appear that the person who made the statement perceived the event which the statement explains or describes. The statement must be the spontaneous result of an occurrence operating upon the perceptive senses of the speaker, rather than the result of inference or surmise.[8]

Accordingly, the wife's lack of any personal knowledge in *Watson* precluded the admissibility of the statement pursuant to the spontaneous exclamation exception.

In this instance, however, the personal knowledge requirement is met, since the declarant was the subject of the assault. The issue then focuses on the circumstances under which her statement was made in order to determine whether it was spontaneous. Our examination of the record reveals that five to ten minutes elapsed between the time the incident occurred and the time Doretha related the statement to Mrs. Amouak. There was testimony that during this period Doretha was greatly excited and emotionally upset. Under such conditions, there was little like-

---

7. 29 Am.Jur.2d Evidence § 267, at 316 (1967) (footnote omitted). *See also* C. McCormick, Evidence § 57, at 133–34 (1954).

8. 387 P.2d at 291 (footnote omitted).

lihood of fabrication for the purpose of creating evidence. For these reasons, the statement was admissible under the spontaneous exclamation exception to the hearsay rule.[9]

### III.

Appellant's third issue on appeal involves the effect of the prosecutor's failure to produce the panties as tangible evidence. According to the testimony, about two weeks before trial, the evidence custodian received erroneous information that the case against appellant was no longer in court. In keeping with the normal practice of the Fairbanks police department, the evidence custodian destroyed the panties as unused evidence having no apparent value. Defense counsel contended that this negligent destruction of the panties prevented him from discrediting testimony concerning any stains on the garment or whether, as alleged by the prosecutrix, the panties were torn by the defendant, or merely worn out. In connection with this third issue, appellant asserts that the trial court erred in denying a motion to dismiss the indictment, or alternatively to preclude the state from introducing evidence regarding the condition of Doretha's panties. The state con-

tends that defense counsel did not timely object to preclude the state from making any mention of Doretha's panties, thereby losing his right to appeal, absent plain error.[10] In addition the state alleges that due to noncompliance with Appellate Rule 9(e)[11] appellant should be prevented from raising any error by the court in denying the motion to dismiss.

At the beginning of the second trial, defense counsel moved for a dismissal of the indictment on the ground that Doretha's panties had been negligently destroyed by the evidence custodian. The trial court denied the motion to dismiss. For purposes of appeal, the issue was properly raised below. However, the state argues that counsel listed ten points on appeal, none of which included any trial error in denying his motion to dismiss the indictment.[12] The dismissal issue was raised only in appellant's brief thus failing to comply with the technical requirements of Appellate Rule 9(e).

In Miller v. Fairbanks, 509 P.2d 826, 829 (Alaska 1973), this court recognized instances where the necessity for strict adherence to its appellate rules has been relaxed.[13] These cases indicate a

9. *See also* Meyst v. East Fifth Avenue Service, Inc., 401 P.2d 430, 437 (Alaska 1965). Furthermore, as Wharton points out, statements concerning the crime of rape or sexual assault, shortly after the commission of the act are admissible as a recognized exception to the hearsay rule:

> In a prosecution for a sex crime, such as rape or assault with intent to rape, it may be shown by testimony of the prosecutrix or by that of some other witness, that the prosecutrix made complaint of the crime shortly after its commission. Such evidence tends obviously to indicate the truth of the charge and is corroborative thereof; conversely, evidence of the failure to make a prompt complaint casts doubt upon the truth of the claim that a crime had been committed.

2 F. Wharton, Criminal Evidence § 313, at 113–114 (13th ed. Charles E. Torcia 1972) (footnotes omitted).

10. Alaska Cr.R. 47 provides in pertinent part:
(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed

although they were not brought to the attention of the court.

11. Appellate Rule 9 provides in pertinent part:
(e) Statement of Points. The appellant shall serve and file with his designation a concise statement of the points on which he intends to rely on the appeal. The court will consider nothing but the points so stated. On motion, and for cause, the statement of points may be supplemented subsequent to the filing of the designation of record.

12. Point five of appellant's statement of points on appeal only referred to the alternative motion:
5. The court erred in permitting testimony, and comment upon, the victim's panties when they were not available to be introduced into evidence.

13. For example, although appellants in Lapham v. Town of Haines, 372 P.2d 376 (Alaska 1962), failed to file a statement of points on appeal, the court *sua sponte* disposed of the

willingness to relax the rules where one party will suffer substantial injustice and where there is no prejudice to the other party. Since strict compliance with Appellate Rule 9(e) in this instance would unduly prejudice the defendant for his attorney's oversight in failing to comply with the technical requirements of the rule, this issue will be deemed preserved for purposes of appeal.[14] Since appellant's motions for dismissal and preclusion both involve the same substantive claim, for purposes of clarity the procedural aspects of appellant's motion for preclusion will be discussed before resolving the substantive claim.

As pointed out above, defense counsel also requested in the alternative that the state should be precluded from making any mention of the panties. After taking the motion under advisement, the court refused to give the preclusion order.[15] This denial can best be viewed as a refusal to rule on the motion at the particular time, not as a denial of defense counsel's substantive claim.[16] Essentially the trial court's ruling amounted to reserving a ruling on the objection until the evidence should be offered. Under these circumstances, most courts would require defense counsel to renew his objection at an appropriate time.[17] Since counsel failed to make a timely objection, defense counsel in this situation is deemed to have waived any objection, because he did not object to the anticipated response to the prosecutor's question.[18] Due to appellant's failure

main issue acknowledged by both parties in their briefs. Similarly in Rego v. Decker, 482 P.2d 834, 841 (Alaska 1971), the court in relaxing strict compliance with former Supreme Court Rule 11(a)(6) indicated that appellants' failure to list the relevant portions of the record did not waste the court's time nor prejudice Decker's rights "because the first paragraph of the Regos argument made the specification concrete." Under the circumstances presented in *Rego*, compliance with the Appellate Rules would work an injustice.

14. App.R. 46.
They [the rules] may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice.

15. In addition, the court warned defense counsel that objections would have to be properly made in order to preserve them.

16. Thus we are not confronted with a situation where counsel's objection to the introduction of certain evidence is overruled. Under such circumstances it may not be necessary for counsel to renew the objection each time opposing counsel refers to the objectionable evidence. Counsel is also permitted to cross-examine a witness on this evidence without waiving his objection. C. McCormick, Evidence § 55, at 129–130 (1954) (footnotes omitted).
If it happens that a party who has objected to evidence of a certain fact himself produces evidence from his own witness of the same fact, of course he has waived his objection. However, when his objection was made and overruled he was required and

entitled to treat this ruling as the 'law of the trial' and to explain or rebut, if he can, the evidence which has come in over his protest. Consequently, it will not be a waiver, if he cross-examines the adversary's witness about the matter, even though the cross-examination entails a repetition of the fact, or if he meets the testimony with other evidence which under the theory of the objection would be incompetent.
*See also*, 1 J. Wigmore, Evidence § 18D, at 345–346 (3rd ed. 1940); Claycomb v. Howard, 493 S.W.2d 714 (Ky.1973) (plaintiff did not waive objection to testimony of a state trooper by calling a sheriff as his witness to rebut state trooper's testimony since a party whose objection is overruled is entitled to explain or rebut evidence which came in over his protest).

17. Annot., 88 A.L.R.2d 12, 109 (1963).
The substance of what appears to be the more general rule, supported by many of the cases, is that where the trial court, instead of ruling upon an objection or motion to strike certain evidence, takes the question under advisement or otherwise reserves or postpones ruling thereon, it becomes incumbent upon the objecting party to later actively bring the reserved or postponed question concerning such evidence to the trial court's attention and ask for a ruling thereon . . . .

18. 1 J. Wigmore, Evidence § 18, at 323, 344 (3rd ed. 1940). On this point, McCormick states:
The cardinal point is that counsel are not allowed to gamble upon the possibility of a favorable answer, but the objection must be

to properly raise the issue at the trial court level, plain error would have to be shown to prevail on this point on appeal.[19] To be plain error, the alleged error must affect substantive rights and be "obviously prejudicial."[20] For the reasons given below, there is no plain error since the alleged error did not affect appellant's substantive rights.

Appellant's substantive argument is based on Alaska Criminal Rule 16 and the due process clause of the United States Constitution. Former[21] Criminal Rule 16 provided in pertinent part:

> Upon motion of a defendant at any time after the filing of the indictment or information the court may order the prosecuting attorney to permit the defendant to inspect and copy . . . tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable.

This rule is derived from its federal counterpart Criminal Rule 16. Although the rule is discretionary, it has been interpreted to give the defendant " 'virtually an absolute right' "[22] of discovery of those items specified in the rule. It is important to note that the word "material" is given a very broad interpretation for discovery purposes. However, for purposes of determining reversible error based on a denial of due process, different considerations are involved in defining the scope of materiality.

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held, *inter alia,* that the prosecution's suppression of an accomplice's confession violated the due process clause.

> We now hold that the suppression by the prosecution of evidence *favorable to an accused* upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.[23]

The District of Columbia Circuit Court of Appeals in United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971), has broadened this due process requirement of disclosure for the purpose of determining reversible error:

> [I]t is the law in this circuit that the due process requirement applies to all evidence which 'might have led the jury to entertain a reasonable doubt about [defendant's] guilt,' and that this test is to be applied generously to the accused when there is 'substantial room for doubt' as to what effect disclosure might have had.[24]

The court in *Bryant* found most instructive the Supreme Court's decision in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). Al-

---

made as soon as the ground becomes apparent. Usually this will be as soon as the question is asked, assuming that the question shows that it calls for inadmissible evidence. Then counsel must, if opportunity affords as it usually does, state his objection before the witness answers. But sometimes this is not feasible. A forward witness may answer before he had a chance to object. A question which is not objectionable may be followed by an unresponsive answer, which is. Or, after the evidence is received, a ground of objection to this evidence is disclosed for the first time in the later course of the trial. In all these cases an after-objection may be stated as soon as the ground appears, and in proper technique, such after-objection is phrased as a motion to strike out the objectionable evidence, and for an instruction to the jury to disregard it.
C. McCormick, Evidence § 52, at 115–116 (1954) (footnotes omitted).

19. Alaska Cr.R. 47(b).

20. Burford v. State, 515 P.2d 382 (Alaska 1973).

21. Criminal Rule 16 was amended by Supreme Court Order 157 effective February 15, 1973. This case was tried in January, 1972.

22. 1 C. Wright, Federal Practice and Procedure (Criminal) § 253, at 500 (1969).

23. 373 U.S. at 87, 83 S.Ct. at 1197, 10 L.Ed. 2d at 218 (emphasis added).

24. 439 F.2d at 648 (footnotes omitted).

though *Augenblick* was not a criminal case, nevertheless one of the issues before the Supreme Court was whether non-compliance with the Jencks Act [25] amounted to a denial of due process. In its decision the Supreme Court made clear that non-disclosure of evidence required to be produced at defendant's request does not in all instances amount to a denial of due process.

> The Court of Claims, in a conscientious effort to undo an injustice, elevated to a constitutional level what it deemed to be an infraction of the Jencks Act and made a denial of discovery which 'seriously impeded his right to a fair trial' a violation 'of the Due Process Clause of the Constitution.' . . . But apart from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle . . . or trial by ordeal . . . than a disciplined contest.[26]

Recently, this court in Lee v. State, 511 P.2d 1076 (Alaska 1973), was confronted with a similar due process claim. Defendant was convicted for possession of heroin.

A search incident to an arrest produced four balloons of which three contained a residue of white powder. A laboratory analysis made to determine the nature of the white powder in one of the balloons consumed its entire contents. On appeal, Lee alleged that he was denied due process of law when the laboratory analysis was admitted into evidence because the defense was deprived of any independent examination of the substance. In rejecting Lee's due process claim, we held that absent any allegation and proof of intentional destruction, or deliberate attempts to prevent discovery of evidence favorable to the defense, there is no error in the admission of evidence regarding a chemical analysis which exhausts the substance under consideration.[27] In defining the parameters of due process, we adopted with approval the standard presented in *Augenblick*.

In this case, we are satisfied that under the standards of *Brady, Bryant, Augenblick* and *Lee*, appellant was not denied due process.[28] As mentioned earlier, defense counsel wanted the underwear to discredit testimony concerning any stains on the garment and to determine whether the panties were torn by the defendant or

---

**25.** 18 U.S.C. § 3500 (1969).

**26.** 393 U.S. at 356, 89 S.Ct. at 534, 21 L.Ed. 2d at 545 (citations omitted).

**27.** This court in Wright v. State, 501 P.2d 1360, 1371 (Alaska 1972), held, *inter alia*, that the inadvertent destruction of a police officer's notes did not constitute grounds for reversal so long as there was no question of bad faith in the destruction.

**28.** We note that absent constitutional restrictions it is not necessary that physical evidence be introduced before testimony can be taken concerning the evidence. However, where the contents of a writing are in issue, the Best Evidence Rule places a higher burden on the party seeking to introduce the contents of the writing to produce the original writing into evidence. In the case of "uninscribed chattels" a witness' testimonial knowledge of the physical object often obviates the strict requirements of the Best Evidence Rule.

4 J. Wigmore, Evidence § 1181, at 419–421 (4th ed. rev. J. Chadbourn 1972):

> [I]t is entirely proper that a rule of such strictness [Best Evidence Rule] should not be applied so broadly as to require the production of anything but writings; and such is the accepted doctrine . . . . .
>
> . . . . .
>
> Nevertheless, it is conceivable that upon occasion the particular features of an uninscribed chattel may be so open to misconstruction and may become so material to the issue that it would be proper to require production . . . . .. A correct solution is to leave to the discretion of the trial court the occasional application of the rule to uninscribed chattels.

*See also* London v. Standard Oil Company of California, Inc., 417 F.2d 820, 825 (9th Cir. 1969) (secondary evidence is admissible when the primary evidence is inadvertently destroyed or lost).

merely worn out. As to the stains, the assumption is that the wetness or stickiness on Doretha's legs would have stained her panties when Doretha dressed herself after the assault. Presumably, the absence of any stains would discredit Doretha's testimony that the defendant attempted sexual intercourse. However, Police Officer Keber testified that when Doretha handed the panties over to him as evidence, he found no wetness or stickiness. This testimony was undisputed, hence defense counsel's need to examine the underwear for stains was unnecessary since the officer's testimony indirectly supported the theory of the defense. As to the physical condition of the panties, there was testimony that the garment was torn. Although an inspection of the underwear might possibly have been helpful to determine if the garment was merely worn out thereby discrediting Doretha's testimony concerning the sexual assault, this particular aspect of the case was insignificant when taken in the context of the total evidence presented.

 Although in this instance the loss of evidence did not constitute a denial of due process, the preservation of evidence, the loss of which may or may not amount to a denial of due process, is of special significance to a defendant preparing his defense. Therefore, we believe that the police and other law enforcement agencies should undertake to promulgate regulations and systematic procedures to preserve all evidence obtained in the course of an investigation.

In this case we are satisfied that the loss of evidence was not intentional nor in the context of this trial was the evidence crucial to Torres' defense. Due process was not denied, substantive rights were not affected; plain error was not shown. The trial court did not err in allowing testimony that Doretha's panties were torn nor in refusing to dismiss the indictment on the grounds that the panties were not produced at trial.

The judgment of conviction is affirmed.