*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MARIAH B., | ) |
| | ) Supreme Court No. S-18026 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-19-00037 CN |
| v. | ) |
| | ) O P I N I O N |
| STATE OF ALASKA, DEPARTMENT OF | ) |
| HEALTH & SOCIAL SERVICES, OFFICE | ) No. 7573 – December 10, 2021 |
| OF CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Emily L. Jura, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Laura Fox, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Laura Hartz, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

WINFREE, Chief Justice.

## I. INTRODUCTION

The superior court terminated a mother's parental rights to her daughter after a termination trial. The mother appeals, and we address only her first and predicate

evidentiary appeal point:  Did the superior court improperly admit and rely on hearsay testimony, under CINA Rule 18(f)[1] or otherwise, despite the mother's objections?

We conclude that on the facts of this case the mother preserved her evidentiary appeal point; we reject the Office of Children's Services's (OCS) assertion that the mother waived her evidentiary objection by not repeatedly raising it to every question asked during the relevant testimony.  We also conclude that, because the superior court did not explain its evidentiary ruling at any point during the relevant testimony or in its termination decision, we cannot determine:  (1) whether the court allowed some or all of the hearsay testimony for limited purposes; (2) how the court used the hearsay evidence to reach its findings; or (3) whether the court erred or abused its discretion by allowing and relying on the hearsay testimony.  We therefore remand to the superior court for a full explanation of its evidentiary ruling, how the ruling relates to the hearsay testimony, and how the hearsay testimony relates to the court's findings.

---

[1]    CINA Rule 18(f) states:

> Hearsay that is not admissible under a recognized exception to the hearsay rule is not admissible at a trial on a petition to terminate parental rights to prove that the child has been subjected to conduct or conditions described in AS 47.10.011.  Otherwise, hearsay may be admissible at the trial if it is probative of a material fact, has circumstantial guarantees of trustworthiness, and the appearing parties are given a fair opportunity to meet it.

*See also Jeff A.C., Jr. v. State*, 117 P.3d 697, 709 (Alaska 2005) (Bryner, J., concurring) ("Rule 18(f) adopts a two-tiered standard for hearsay in termination trials[;] [it] allows reliable hearsay to be admitted for most purposes, but it requires compliance with the formal hearsay exceptions set out in the Alaska Rules of Evidence when hearsay is offered to prove an issue related to adjudication.").

## II. RELEVANT PROCEEDINGS

OCS petitioned to terminate the mother's parental rights to her daughter, alleging that the child was in need of aid under AS 47.10.011(1) (abandonment), (9) (neglect), and (10) (parental substance abuse). A termination trial took place over several days in early 2021.[2] OCS's primary witnesses were the child's foster mother and an OCS supervisor.

---

[2] Under relevant Alaska Child in Need of Aid (CINA) statutes and rules, the mother's parental rights could be terminated after trial only if the superior court finds:

> (1) by clear and convincing evidence that
>
>> (A) the child has been subjected to conduct or conditions described in AS 47.10.011 and
>>
>>> (i) the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
>>>
>>> (ii) the parent has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; [and]
>>
>> . . . .
>
> (2) by clear and convincing evidence that
>
>> (A) the Department has complied with the provisions of AS 47.10.086 concerning reasonable efforts; [and]
>>
>> . . . .
>
> (3) by a preponderance of the evidence that termination of parental rights is in the best interests of the child . . . .

CINA Rule 18(c); AS 47.10.088 (establishing requirements for termination).

The OCS supervisor was prepared to base her trial testimony on her personal knowledge as supervisor, her occasional personal involvement in the mother's case, and her review of the report of contact (ROC) notes logged by caseworkers in OCS's central record keeping system. OCS also was prepared to offer the ROC notes as business records under Alaska Evidence Rule 803(6).[3] But before the supervisor took the stand, the mother objected to the supervisor's anticipated testimony to the extent it was based on hearsay contained within the ROC notes and informal conversations with caseworkers. The mother asserted "a standing objection to . . . [the supervisor] testifying to things that . . . caseworkers did, based on their notes." The mother also objected to admitting the ROC notes as business records.

OCS countered that the supervisor's testimony was based on her "having direct hands on the case throughout" and that she would testify based on "her own direct

---

[3]     Alaska Evidence Rule 803 provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(6) Business Records. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge acquired of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

experience . . . as well as her understanding as the supervisor." OCS claimed that the supervisor not only could effectively lay the foundation for admitting the ROC notes as business records but also could corroborate the notes' contents with personal knowledge. OCS argued that ROC notes had been routinely introduced as business records in previous cases.

The superior court initially declined to rule on the mother's evidentiary objections, reasoning that it "[didn't] know the purpose [for which] OCS want[ed]" the supervisor's testimony. The court commented that the supervisor might refer to the ROC notes as "possible background" or to illustrate why she was "more on the lookout for X, Y, and Z" and that the court might admit the notes for a more "limited purpose" than their substantive truth. The court asked both parties to brief the issues before trial resumed.

The parties' briefing focused on the admissibility of the ROC notes as business records and the admissibility of the supervisor's hearsay testimony under CINA Rule 18(f). OCS argued that the ROC notes satisfied the business records exception in Alaska Evidence Rule 803(6). OCS also argued in conclusory fashion that the supervisor's testimony, even if otherwise inadmissible hearsay, was admissible under CINA Rule 18(f) because it was relevant to the required failure to remedy and reasonable efforts inquiries, had "circumstantial guarantees of trustworthiness," and the mother had "a fair opportunity to meet it."[4] The mother argued that the ROC notes were unreliable as business records and compared them to incident reports we found inadmissible as

---

[4]  *See supra* note 1 (setting out Rule 18(f)'s (1) prohibiting of hearsay not otherwise admissible under residual hearsay exception to prove child is in need of aid under AS 47.10.011 and (2) allowing use of such hearsay when it is probative of material fact, it has circumstantial guarantees of trustworthiness, and parties have fair opportunity to meet it); *supra* note 2 (outlining findings required to terminate parental rights).

business records, due to potential bias, in *Wassillie v. State*.[5] The mother also argued that the ROC notes — and any testimony based on them — did not have the "circumstantial guarantees of trustworthiness" required by Rule 18(f) and thus were inadmissible.

When proceedings reconvened, the mother again asserted her evidentiary objections. OCS suggested proceeding with the supervisor's testimony and "not[ing] [the mother's] objection for purposes of the trial . . . rather than . . . rehashing every question along those lines." The superior court seemingly agreed:

> So what I want to do is just proceed. We'll take [the supervisor's] testimony and we'll see just what she does have to say, and I might alter my rulings. I will, in any event, give it the weight I think it deserves, but of course that's different from admissibility. Right now, I'm going to deem it admissible, but I reserve the right to maybe change my mind after I hear a little bit more. . . . And believe me, I will let everybody know squarely one way or the other . . . . [D]oes that work?

Both parties assented. The court emphasized that the mother was "not waiving anything" with respect to her objection.

The supervisor testified that she had: worked for OCS since 2003; been a supervisor since 2011; and supervised the CINA Therapeutic Court (CTC) since 2015.[6]

---

[5]     411 P.3d 595, 604 (Alaska 2018) (holding that incident report lacked "assured neutrality" and "could be influenced by the reporter's incentives to misrepresent, including a 'motive to attempt to affect the outcome,' " and concluding report could not "be accorded the presumption of accuracy that Evidence Rule 803(6) recognizes in business records" (quoting *State v. Huggins*, 659 P.2d 613, 616 (Alaska App. 1982))).

[6]     CTC is a "parallel court" program for participants with an ongoing CINA case; its mission is "to accelerate permanency in child welfare cases by providing enhanced court oversight for parents or custodians in need of recovery services." ALASKA COURT SYSTEM, PUB-122, ANCHORAGE CINA THERAPEUTIC COURT,

(continued...)

She said she regularly supervised roughly 5 caseworkers at a time, each handling between 12 and 30 cases. She claimed to have a "high knowledge of the majority of . . . [her] workers' cases" and even more knowledge of CTC cases. She explained that supervisors develop mentor relationships with caseworkers and that if a caseworker were unavailable for an extended period of time, she would "babysit that caseload" such as by going to court hearings or participating in administrative reviews. She said she supervised the mother's case from its inception, occasionally filling in when the case was "without a worker."

The supervisor elaborated on the purpose and process of creating ROC notes. She explained that caseworkers have been required since 2004 to document all developments relating to their cases, including contact with parents and court hearing notes, in a centralized system. She noted that OCS's "philosophy is basically if it's not in [the system], it didn't happen." She said that the ROC notes help caseworkers catch up on newly assigned cases, keep track of case developments, find individuals' contact information, and facilitate interdepartmental coordination. She testified that notes must be entered within five days of an incident, that they are subjected to supervisor audits for timeliness and thoroughness, and that caseworkers sometimes have to be reminded to make timely entries. She also said that supervisors have tools to verify that the dates in the notes match the time they were entered.

The supervisor testified that she had reviewed the relevant ROC notes for the mother's case and nothing seemed out of the ordinary, although the supervisor

---

**6**      (...continued)
https://public.courts.alaska.gov/web/forms/docs/pub-122.pdf.      Participants must "acknowledge a need for recovery services," regularly attend court, and follow a recommended treatment plan. *Id.* Participants are assigned a team including an OCS caseworker and a CTC judge. *Id.*

acknowledged that she had not directly supervised all the caseworkers whose notes she reviewed. She said the ROC notes "concurred with things [she] independently knew or remembered from [her] more direct work on the case."

The supervisor's testimony was at one point interrupted for another witness. Before the supervisor resumed the stand, the mother again raised her evidentiary objections. The mother again characterized her objections as a "blanket objection," arguing that the supervisor should not be allowed to testify, based on ROC notes, about actions taken by other caseworkers who were not present or subject to cross-examination. The superior court stated that it stood by its "earlier ruling" and allowed the continuing testimony.

The supervisor then testified that OCS became concerned about the family after receiving reports of the mother's drug use and the daughter's subsequent positive test results. The supervisor also described OCS's concerns with the mother's alleged involvement with multiple sex offenders. The supervisor claimed to know from the ROC notes that the mother had a sex offender "living in [her] home." But the supervisor later admitted that the ROC notes mentioned nothing about cohabitation and that her "understanding" of the situation was based on an undocumented conversation with a caseworker.

The supervisor also described the mother's CTC progress. The supervisor explained that the mother had struggled with housing and employment, which the mother prioritized despite OCS's concerns about her sobriety and progress through treatment. The supervisor said the mother progressed through treatment more slowly than is typical. The supervisor said the mother was discharged from CTC at the end of 2019 after receiving the "max benefit she could" and failing to progress.

The supervisor then described the mother's struggle to consistently produce negative urinalysis results in the latter half of 2020. The supervisor testified that the

mother had admitted to a relapse in the summer of 2020 and that urinalysis records admitted into evidence reflected a pattern from mid-June through October of no-shows and diluted samples, which OCS considers as testing positive.

The supervisor testified that OCS had ongoing concerns about the mother's sobriety and history of relapses, even assuming the mother had been sober since her summer 2020 relapse. The supervisor said that the mother had not fully understood the impact of her substance abuse on her daughter and that the mother could not keep her daughter safe. The supervisor said she drew this conclusion from reading caseworkers' notes. She also reported that the mother was not taking advantage of OCS-arranged visitation, though the supervisor could not confirm this through personal knowledge. Finally, the supervisor testified that OCS had the ability to refer the mother for mental health treatment but that it did not do so. The supervisor testified that overall, OCS could have done nothing more to help the mother.

OCS ultimately did not offer the ROC notes into evidence. But at OCS's request the court did admit into evidence numerous case plans, treatment records, urinalysis and hair follicle test results, intake assessments, CTC reviews, and observation records.

## III.   DISCUSSION

The superior court explained its termination order on the record, making all the required findings.[7] The court referred to the supervisor's testimony at several points and stated that the supervisor was "very credible in this case throughout, top to bottom." But the court did not mention the supervisor's hearsay testimony, the reasons for or limitations on its admissibility, or how the hearsay testimony played a part in the court's decision.

---

[7]      *See supra* note 2 (setting out required termination findings).

### A. Preservation Of Evidentiary Issue

OCS argues that the mother did not preserve her hearsay objections to the supervisor's testimony and therefore cannot raise them on appeal. According to OCS, the mother should have objected to each portion of the supervisor's testimony that was based on hearsay because the superior court made only preliminary, not final, rulings on the evidence. The mother responds that the court's rulings on her standing objections preserved them for appeal.

We have explained that an evidentiary objection should be renewed if the court "takes the question under advisement or otherwise reserves or postpones ruling thereon."[8] Whether the mother preserved her hearsay objections in this case thus turns on whether the court made a definitive ruling about the proposed testimony or reserved its ruling and told the mother to raise contemporaneous objections. We emphasize, however, that a party's unilateral, putative "blanket objection" does not necessarily preserve an evidentiary objection and that the correct focus is on the court's rulings.

The superior court definitively ruled — twice — about admitting the supervisor's testimony. The first ruling came after the court ordered additional briefing on the admissibility of both the ROC notes and the testimony. The court declined to rule on the admissibility of the ROC exhibit, but it ruled on the admissibility of the supervisor's testimony. The court said it wanted to "just proceed" and would "deem [the supervisor's testimony] admissible," though it "might alter [its] rulings" or "change [its] mind" later. The court assured the mother that she was "not waiving anything" by allowing testimony to proceed without further objection.[9] The second ruling came when

---

[8]     *Torres v. State*, 519 P.2d 788, 794 n.17 (Alaska 1974).

[9]     OCS now argues that the mother should not have been permitted to make a "standing objection" to the testimony before the supervisor even took the stand and that

(continued...)

-10-                                                                                    **7573**

the supervisor returned to the witness stand after a break for another witness's testimony, and the mother again objected. The court stated that it stood by its "earlier ruling."

Taken as a whole, the court's rulings on the supervisor's testimony do not read as the type of preliminary or reserved rulings requiring contemporaneous objections to preserve the issue for appeal.[10] Nor did the court tell the mother to raise her objections again and again contemporaneously with the questioning.[11] The court instead ruled the supervisor's hearsay testimony was admissible subject to the court's *own* change of mind and specifically assured the mother that she was "not waiving" her hearsay objection by allowing the testimony to proceed. We therefore conclude that the mother preserved her objection to the admission of the supervisor's hearsay testimony.

### B.   Evidentiary Issue

The question then becomes whether we can review the superior court's evidentiary ruling on the record presented or must remand for further explanation. When evaluating the adequacy of the record for appellate review in other contexts, we have asked whether the court gave a "clear indication of the factors . . . [it] considered

---

**9**      (...continued)
the mother's failure to object to each disputed portion of the hearsay testimony hampered the development of the record. But at the time OCS proposed to the superior court that the mother make a blanket objection "for purposes of the trial" and that questioning proceed "to avoid objections and rehashing every question along those lines." OCS also expressed its desire for a final ruling so that it could decide whether to subpoena more witnesses. The court's evidentiary ruling thus was precisely what OCS had requested.

**10**      *See Torres*, 519 P.2d at 794 n.17.

**11**      *See id.*

important in exercising its discretion," either explicitly or implicitly from the record.[12] We see no reason that framework would not apply in this context.

CINA Rule 18(f) prohibits the use of otherwise inadmissible hearsay evidence to prove a child is in need of aid under AS 47.10.011.[13]  But the Rule allows, for other purposes, the use of otherwise inadmissible hearsay evidence with "circumstantial guarantees of trustworthiness" which the opposing party has a "fair opportunity to meet."[14]  The Rule does not prescribe factors for consideration, but the Rule's requirements are not empty phrases.  We have yet to authoritatively interpret the Rule or similarly worded rules applicable at other stages of a CINA proceeding,[15] but Rule 18(f) shares language with the Alaska Evidence Rules:  Like CINA Rule 18(f), Evidence Rules 803(23) and 804(b)(5) — the residual hearsay exceptions — call for

---

[12]     *See, e.g.*, *Smith v. Weekley*, 73 P.3d 1219, 1226-27 (Alaska 2003) (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 139 (Alaska 1997)); *Borchgrevink*, 941 P.2d at 139 (concluding trial court could have made findings more explicit but record suggested court had adequately considered statutory factors for child custody determination to allow for appellate review); *see also Dragseth v. Dragseth*, 210 P.3d 1206, 1210-11 (Alaska 2009) (citing *Smith* and remanding because trial court did not indicate which factors it considered when determining children's best interests); *Bird v. Starkey*, 914 P.2d 1246, 1249-50 (Alaska 1996) (remanding to trial court for further explanation of its decision in custody dispute to send child to particular school because lack of findings made decision "essentially unreviewable"); *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190-91 (Alaska 1987) (reversing and remanding for better explanation of trial court's denial of visitation rights).

[13]     *See supra* note 1.

[14]     *See supra* note 1.

[15]     *See* CINA Rule 10(b)(3) (allowing limited hearsay testimony in temporary custody hearings); CINA Rule 17(e) (allowing limited hearsay testimony in disposition hearings); CINA Rule 17.2(d) (allowing limited hearsay testimony in permanency hearings).

"circumstantial guarantees of trustworthiness."[16]   Our cases discussing the residual hearsay exceptions therefore provide useful guidance.

We have instructed courts to "conduct a searching review of the facts of the individual case before determining the applicability of either [residual exception]."[17] For example, in *Matter of A.S.W.* we affirmed the admission of a videotaped interview with a child victim of sexual abuse under a residual hearsay exception because the trial judge viewed the video and made specific findings about why it was reliable.[18]  Unlike in *A.S.W.*, the superior court in this case conducted no pre-ruling review of the facts, let alone a "searching" one.[19]

The parties briefed the admissibility of the OCS supervisor's testimony, and OCS argued that the supervisor in this case had more personal knowledge than an ordinary supervisor.  But there is no indication, explicit or implicit, that the court carefully considered the briefing and arguments as they related to specific offered testimony.  The court instead remarked that it had a "generalized" sense of the arguments around admissibility but that it did not know many details.  It nevertheless admitted the testimony subject to changing its mind, but, despite commenting that it would "let everybody know" at some point "before . . . [the OCS supervisor] step[ped] down," it offered no additional clarification or analysis.  We thus are left with no record about the purpose(s) for which the OCS supervisor's hearsay evidence was offered; whether the

---

[16]    Alaska R. Evid. 803(23), 804(b)(5) (requiring allowable hearsay to have "circumstantial guarantees of trustworthiness").

[17]    *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1218 n.17 (Alaska 1991).

[18]    834 P.2d 801, 802-03 (Alaska 1992).

[19]    *Cf. Broderick*, 808 P.2d at 1218 n.17.

hearsay evidence was admitted under a residual exception to the general hearsay rules or under Rule 18(f)'s three-factor test; or how the hearsay evidence was used to support the superior court's termination findings.

The OCS supervisor's hearsay-based testimony may have satisfied the requirements of Rule 18(f). OCS contends that the OCS supervisor's testimony based on ROC notes would be admissible for non-hearsay proposes, for example "explaining why she did what she did" or "whether OCS made reasonable efforts." OCS also plausibly argues that the Rule is well-suited for situations with high caseworker turnover, leaving OCS supervisors as the only constant presence on the case, but this seems to lead to a conclusion that every supervisor is an "expert" entitled to rely on hearsay evidence to support an opinion.[20] And "[i]n cases involving issues of such fundamental importance as parents' rights to raise their children, it is imperative that the legal system act with great care to protect parties' rights."[21]

If the superior court relied solely on Rule 18(f), the court could have considered and made findings before deciding on the hearsay testimony's admissibility. These findings might include: (1) how closely the supervisor oversaw the caseworkers who created the ROC notes; (2) the supervisor's level of reliance on personal knowledge

---

[20] *See In re Hospitalization of Rabi R.*, 468 P.3d 721, 732 (Alaska 2020) (explaining expert "was entitled to rely on 'facts or data . . . not . . . admissible in evidence' as long as they were 'of a type reasonably relied upon by experts in [that] particular field,' and [to] 'disclose . . . the underlying facts or data' supporting [the expert's] opinion. It was not error for the court to rely on the expert testimony based on such information." (first quoting Alaska R. Evid. 703; and then quoting Alaska R. Evid. 705)); *see also Pingree v. Cossette*, 424 P.3d 371, 378 (Alaska 2018) ("[E]xpert[s] . . . do not have to rely only on admissible evidence in forming their opinion, and evidence they rely on may be disclosed during [their] testimony.").

[21] *Diego K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 411 P.3d 622, 628 (Alaska 2018).

of the case and her level of reliance on the notes; (3) the supervisor's personal involvement in the case; (4) the extent to which the supervisor's testimony was based on hearsay not contained in the notes; (5) the mother's ability to access the hearsay sources, such as other caseworkers and the ROC notes, that informed the supervisor's testimony; (6) the reliability of the ROC notes; (7) the reliability of the supervisor's testimony when the ROC notes themselves were not admitted into evidence, despite OCS claiming that it was routine to do so; and (8) the other caseworkers' availability to testify.

Because the superior court did not explain its reasons for admitting the OCS supervisor's hearsay testimony under Rule 18(f) (or otherwise) or how the hearsay testimony played a part in the court's termination decision, we conclude that this case is "essentially unreviewable."[22] An inquiry into the "circumstantial guarantees of trustworthiness" is inherently fact-specific; it would be difficult to decide whether the superior court abused its discretion[23] without first knowing what factors it relied upon in deciding that the OCS supervisor's testimony met this standard and whether the mother had a "fair opportunity to meet" the testimony, some of which came from conversations with caseworkers that were not captured in the ROC notes.

## IV. CONCLUSION

We REMAND for the superior court's explanation of its evidentiary rulings and how they relate to the findings underlying the termination order. We retain

---

[22] *Bird v. Starkey*, 914 P.2d 1246, 1249-50 (Alaska 1996) (noting case law that "requires the trial court to articulate the reasons for its holding where those reasons are not apparent from the record" and that without such "findings, the order becomes essentially unreviewable").

[23] *See, e.g.*, *In re A.S.W.*, 834 P.2d at 803 n.3 (reviewing evidentiary ruling under residual hearsay exception for abuse of discretion).

jurisdiction to consider the mother's appeal after the superior court issues its explanation of the record.