STATE of Alaska, Petitioner and
Cross-Respondent,

v.

Kenneth E. HUGGINS and Terrence
Connors, Respondents and
Cross-Petitioners.

Nos. 6535, 6595.

Court of Appeals of Alaska.

Sept. 17, 1982.

Michael McLaughlin, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for petitioner and cross-respondent.

Michael P. McConahy, and Paul A. Barrett, Call, Dewitt & Barrett, Fairbanks, for respondents and cross-petitioners.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Kenneth E. Huggins and Terrence Connors were charged as a result of separate and unrelated incidents with driving while intoxicated. During their respective trials the state sought to introduce a group of documents that the parties refer to collectively as the "breathalyzer packet," as a foundation for the admission of the results of breathalyzer examinations administered to Huggins and Connor.[1] *See* AS 28.35.-033(d).

During the state's case-in-chief District Court Judge Stephen R. Cline upheld Connors' objection to the admissibility of the breathalyzer packet into evidence. Subsequently, Superior Court Judge Gerald J. Van Hoomissen granted the state's motion for a stay of the proceedings. The state also sought interlocutory review of Judge Cline's ruling before the superior court pursuant to Alaska Rule of Appellate Procedure 610(b)(1). Judge James R. Blair granted the state's petition for review. Judge Cline did not file a written opinion in *Connors* and the jury has not been dismissed.

Huggins' jury trial also commenced before Judge Cline. Judge Cline also sustained Huggins' objection to admission of the breathalyzer packet. The state requested and was granted a stay of proceedings pending a petition for review. The superior court remanded the case to Judge Cline for reconsideration, and he issued a written opinion setting out his reasons for the suppression order.

The state petitioned separately for hearings before the superior court acting as an intermediate appellate court under Alaska Rule of Appellate Procedure 610(b)(1). Judge Blair issued a memorandum opinion

1. The "packet" was offered as a foundation for evidence that a breathalyzer exam had been administered. It consisted of six documents:

(a) a certificate of the test results for randomly-selected ampoules of the lot used in the breathalyzer analysis in the particular case;

(b) a certificate that the calibrator of the particular breathalyzer machine was licensed to calibrate it;

(c) a certificate of calibration for the particular machine;

(d) a certificate and permit stating that the Department of Public Safety's Criminal Investigation Bureau Laboratory is licensed to operate a laboratory for verification of the chemical composition and volume of ampoules used for breath-testing procedure;

(e) a certificate from Dr. Harry J. Colvin, Chief of the Section of Laboratories of the Department of Health and Social Services, stating that the preceding papers are "true and correct copies of such documents which are in my legal custody" and their facts are "true and correct"; and

(f) a certificate from the Commissioner of the Alaska Department of Health and Social Services, Helen D. Beirne, stating that Dr. Colvin is the custodian of the records of the laboratory section and that his signature is genuine.

The documents offered in these cases are included as an appendix to this opinion.

in *Huggins* granting the state's petition for review and affirming the decision of Judge Cline in excluding the breathalyzer packet. Judge Blair disapproved Judge Cline's holding that the breathalyzer packet was excludable hearsay under Alaska Rule of Evidence 803(8)(b), but affirmed his holding that the documents were excludable as improperly authenticated under Alaska Rule of Evidence 902. The following day Judge Blair issued a memorandum opinion in *Connors*, which followed his *Huggins* decision.

The state petitioned for a hearing in this court and the two cases were consolidated. The state sought review of the portion of Judge Blair's order concerning Alaska Rule of Evidence 902. Connors and Huggins filed their response and cross-petition seeking review of Judge Blair's order holding the breathalyzer packet admissible under Alaska Rule of Evidence 803(8). We have granted both the petition for hearing and cross-petition. We stayed Huggins' and Connors' trials pending our decision, and subsequently issued an order affirming in part and reversing in part Judge Blair's decision. We held that the documents contained in the breathalyzer packet, while hearsay, are within the Alaska Rule of Evidence 803(8) public records exception to the hearsay rule and are not rendered individually or collectively inadmissible under Alaska Rule of Evidence 803(8)(b)(i)–(iii). We also held that subject to certain modifications the various documents are self-authenticating under Alaska Rule of Evidence 902(4).

## ADMISSIBILITY OF THE BREATHALYZER PACKET UNDER THE PUBLIC RECORDS EXCEPTION.

■ We follow *Wester v. State,* 528 P.2d 1179 (Alaska 1974), decided before adoption of the new evidence rules, and hold that the breathalyzer packet is admissible under Alaska Rule of Evidence 803(8)(a).[2] *Wester* held that the "ampule certification and breathalyzer calibration need not be the subject of personal testimony and are clearly admissible under the official records exception to the hearsay rule."[3] 528 P.2d at 1183.

Huggins and Connors argue that Evidence Rule 803(8) supercedes *Wester* and that admissibility of the breathalyzer packet is inconsistent with the language of the

---

**2.** Alaska Rule of Evidence 803(8) provides:
*Hearsay Exceptions-Availability of Declarant Immaterial.*

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(8) *Public Records and Reports.* (a) To the extent not otherwise provided in (b) of this subdivision, records, reports, statements, or data compilations in any form of a public office or agency setting forth its regularly conducted and regularly recorded activities, or matters observed pursuant to duty imposed by law and as to which there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

(b) The following are not within this exception to the hearsay rule: (i) investigative reports by police and other law enforcement personnel; (ii) investigative reports prepared by or for a government, a public office or an agency when offered by it in a case in which it is a party; (iii) factual findings offered by the state in criminal cases; (iv) factual findings resulting from special investigation of a particular complaint, case, or incident; (v) any matter as to which the sources of information or other circumstances indicate lack of trustworthiness. Any writing admissible under this subdivision shall be received only if the party offering such writing has delivered a copy of it or so much thereof as may relate to the controversy, to each adverse party a reasonable time before the trial, unless the court finds that such adverse party has not been unfairly surprised by the failure to deliver such copy.

**3.** *Wester* was decided pursuant to former Alaska R.Civ.P. 44(b), which has been superceded by Alaska R.Evid. 803(8). We are in agreement, however, with the commentary to Alaska R.Evid. 803(8) that "[w]hile this rule may appear, at first blush anyway, to be at odds with *Webster v. State* [sic], *supra,* that case would be decided the same way under these rules." The goals of both rules are the same. First, both rules provide exceptions to the hearsay rule where it is clear that the reliability and trustworthiness of the evidence is assured. Second, with public records, where the reliability is generally not in dispute, the rules promote the efficiency of public activities by eliminating the necessity of having public officials repeatedly testifying to the validity of those records.

rule, the policy behind that rule, and the preservation of the appellees' sixth amendment rights to confrontation. We disagree. We find that admission of the breathalyzer packet under Evidence Rule 803(8)(a) is not precluded by the exceptions to the rule provided in Evidence Rule 803(8)(b)(i)-(iii). Those rules must be read in context with Evidence Rule 803(8)(a). Specifically, the references to "factual findings" in the subparagraphs of Evidence Rule 803(8)(b) must be read in light of the language—"factual findings resulting from an investigation made pursuant to authority granted by law"—embodied in Evidence Rule 803(8)(a). Where a state employee investigates a specific case likely to result in litigation and can foresee the part his findings might play in the resolution of that litigation, he may be motivated to alter his findings to influence that result. We believe that factual findings excluded by Rule 803(8)(b)(i)-(iii) are limited to such situations.

■ Consequently, the calibration of the breathalyzer, 7 AAC 30.050, the certification of ampoules, 7 AAC 30.060, a certification that a given person is legally qualified to calibrate the breathalyzer, 7 AAC 30.-070(3), or a certificate that a given laboratory is approved, 7 AAC 30.060(a), (d), do not constitute "factual findings" from a specific investigation, governed by Evidence Rule 803(8)(a). The factual findings included in the records that comprise the breathalyzer packet are compiled in the regular course of business by government officials in advance of any specific case in which the breathalyzer tested will be used. An official would have no motive to misrepresent those facts because the nexus between his findings and a particular result on a particular prosecution is too attenuated. Since the person certifying the machine has no knowledge of a specific case, he has no incentive to misrepresent. *See Palmer v. Hoffman,* 318 U.S. 109, 110–15, 63 S.Ct. 477, 479–481, 87 L.Ed. 645, 648–51 (1943), *aff'g*

*Hoffman v. Palmer,* 129 F.2d 976 (2d Cir. 1942). An ordinary police accident report is often colored by the officer's judgment and frequently incorporates opinions gathered from second-hand sources who have a stake in pending litigation. The Department of Health and Social Services is the agency charged with the responsibility of promulgating regulations concerning the use of the breathalyzer. While it is a state agency, it has no motive to attempt to affect the outcome in a particular case. The packet itself is merely a record of factual findings recorded in the regular course of business, a record made independently and well in advance of any particular prosecution. Public records that are prepared pursuant to official duty as a regular activity unconnected with litigation are normally reliable and trustworthy. To interrupt public business by requiring the personal testimony of each officer involved in compiling a particular breathalyzer packet would appear to serve no useful purpose, in the absence of some evidence in a specific case that a specific record was inaccurate. *See Wester,* 528 P.2d at 1181; 5 J. Wigmore, *Evidence* §§ 1631, 1633, at 617–18, 623–24 (J. Chadbourn rev. 1974). So long as the proffered facts were those recorded within the scope of the official duty of a public servant the evidence is admissible.

■ Admission of the breathalyzer packet pursuant to Evidence Rule 803(8)(a) does not violate Huggins' and Connors' sixth amendment right to confrontation.[4] The United States Supreme Court has recognized exceptions to the hearsay rule that do not violate the confrontation clause. *See Kirby v. United States,* 174 U.S. 47, 60, 19 S.Ct. 574, 579, 43 L.Ed. 890, 896 (1899); *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (can permit testimony of now deceased witness in former trial upon same indictment to be used as evidence in new trial, without violating confrontation clause); *See also* C. McCor-

---

4. U.S. Const. amend. VI provides in part:
   In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him.

Alaska Const. art. 1, § 11, provides in part:
   In all criminal prosecutions, the accused ... is entitled to ... be confronted with the witnesses against him.

mick, Law of Evidence § 252, at 606 n. 10, 607 n. 13 (2d ed. 1972) (citing cases in which hearsay held not to violate right of confrontation).

We hold that the breathalyzer packet is admissible, but Huggins and Connors were not denied an opportunity to substantively challenge it. *See also Keel v. State,* 609 P.2d 555, 557 (Alaska 1980) (holding that breathalyzer test results are assailable after being admitted into evidence; statute only creates presumption of test's validity); *Cooley v. Municipality of Anchorage,* 649 P.2d 251, 254–55 n. 8 (Alaska App., 1982) (ordinance allows prosecution to introduce breathalyzer test results, but results still may be attacked as invalid). A person charged with driving while intoxicated may call witnesses to testify to inaccuracies in the testing procedure, and may challenge the factual findings themselves after an independent analysis of the breath sample or some other method of verification.[5] Further, "[e]ven after admission of the breathalyzer test results, the burden is still upon the municipality to convince the jury that the breathalyzer test is accurate and that the defendant's blood or breath alcohol was above the prohibited level at the time of driving." *Cooley,* 649 P.2d at 255. Huggins and Connors were not denied an oppor-

tunity to substantively confront the evidence presented against them.

## ADMISSIBILITY OF THE BREATHALYZER PACKET AS SELF-AUTHENTICATING

The state challenges Judge Blair's holding that the breathalyzer packet is inadmissible on the grounds that the documents are not self-authenticating under Evidence Rule 902(1)-(2) or (4).[6] We agree that the documents in the breathalyzer packet are not self-authenticating under Evidence Rule 902(1)-(2). However, we reverse, with minor qualifications, the holding that they were not self-authenticating under Evidence Rule 902(4). We base our decision on five grounds which we discuss in turn.

First, Evidence Rule 902(4) requires that each official record to which it applies must be "authorized by law to be recorded or filed and actually recorded or filed in a public office." Each of the significant component parts of the breathalyzer packet is authorized to be filed by 7 AAC 30.010–.080, and was recorded or filed as required. *See* 7 AAC 30.060(c)-(d) (certification of ampoules); 7 AAC 30.030–.040, .070(3) (certification that the "calibrator" of the breathalyzer is licensed to calibrate it); 7 AAC 30.050(b)(2)–(3) (certificate of breathalyzer

---

**5.** *Municipality v. Serrano,* 649 P.2d 256 (Alaska App., 1982), holds that the state must preserve the breath sample of an individual who takes the breathalyzer test or provide other methods of verification, so as to afford the defendant the opportunity to independently analyze the sample in accordance with the defendant's due process rights under Alaska Const. art. 1, § 7.

**6.** Alaska Rule of Evidence 902(1)–(2), (4) provide:

*Self-Authentication.*
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
(1) *Domestic Public Documents Under Seal.* A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

(2) *Domestic Public Documents Not Under Seal.* A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and the signature is genuine.

(4) *Certified Copies of Public Records.* A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any enactment of the Alaska Legislature or other rule prescribed by the Alaska Supreme Court.

**618**

calibration); and 7 AAC 30.060(a), (d), .080(2) (certificate that a laboratory is "approved" to certify ampoules).

Second, Evidence Rule 902(4) does not require that the original document, a copy of which is filed or recorded, be authenticated under Evidence Rule 902(1)–(3) as a condition precedent to authentication of the copy under Rule 902(4). Rather, Rule 902(4) authorizes the public custodian of an official record filed in his custody to authenticate a copy of it by his certification. The custodian's certificate itself must comply with Rule 902(1) or (2), depending on whether the custodian has a seal. Separate certification as to individual documents in the packet is not required unless the documents are certified by different custodians, so long as a certification as to multiple documents makes clear, on its face, the documents to which it applies.

■ Helen Beirne, the Commissioner of Health and Social Services, has a seal. Harry Colvin, the custodian of the public records which contain the various documents included in the breathalyzer packet, apparently does not have a seal. We hold therefore that Beirne's certification that Colvin's signature is genuine and that he is the official custodian of the records contained in the first four parts of the breathalyzer packet satisfies Evidence Rule 902(2), thus making those public records included in the packet certified by Colvin admissible under Alaska Evidence Rule 902(4).

■ Third, we hold that absent evidence to the contrary, the trial court should presume that what purports to be a state official's signature, under seal, certifying a document, or a signature, or that a person is a public custodian, is in fact a valid signature even if the signature is a stamped or printed facsimile. We believe AS 11.56.610(2) and AS 11.56.900(4), which make proffering false evidence a felony, act as sufficient deterrents to the illegal use of an official's facsimile signature or seal so as to justify reliance on facsimiles.[7] Additional protection is afforded by the seal. An unauthorized person would have to have access to both the seal and the signature stamp to perpetrate a fraud. Since neither Huggins nor Connors suggests that Beirne was not Commissioner of Health and Social Services, or that she did not authorize the use of her stamp, we find that use of her facsimile signature complies with Evidence Rule 902(1)-(2), (4).

■ Fourth, in accordance with 7 AAC 30.070(2)–(3), the Department of Public Safety is required to file the names of breathalyzer instructors and operators who have been qualified under the regulations with the Department of Health and Social Services.[8] Assuming the department complies with this regulation, the custodian of the state records, in this case Colvin, may properly authenticate a breathalyzer instructor's certification for calibration in three ways. First, the custodian may review the records on file and certify that the names of certain individuals appear therein as qualified instructors. *See Keel v. State,* 609 P.2d 555, 558 (Alaska 1980); Evidence Rules 1005 and 1006. A certification from the custodian similar to the one presented in the packet, which stated on its face that the information contained therein was based on a personal review of the documents filed pursuant to 7 AAC 30.070,

---

7. AS 11.56.610(2) provides:

*Tampering with physical evidence.* (a) A person commits the crime of tampering with physical evidence if he

(2) makes, presents, or uses physical evidence, knowing it to be false, with intent to mislead a juror who is engaged in an official proceeding or a public servant who is engaged in an official proceeding or a criminal investigation;

AS 11.56.900(4) defines "physical evidence" as "an article, object, document, record, or other thing of physical substance."

8. 7 AAC 30.070(2)–(3) provides:

MATERIALS TO BE FILED.
The Department of Public Safety shall file the following materials with the Department of Health and Social Services:

. . . . .

(2) the names of instructors conducting courses in each training session;
(3) the names and addresses of persons successfully completing the training; . . .

would suffice. Second, the state may elect to submit properly authenticated copies of the actual records designating authorized instructors filed at the Department of Health and Social Services pursuant to Evidence Rule 902(4). Third, the breathalyzer instructor can personally certify that he is a qualified instructor. *Keel,* 609 P.2d at 559 n. 12.

Finally, the Department of Health and Social Services' Division of Public Health must file with the department as a public record a list of those laboratories authorized by the department to certify breathalyzer ampoules. *See* 7 AAC 30.060(a), .080(2). A certification of breathalyzer ampoules should reflect that it came from an authorized laboratory.

The trial courts were concerned that the breathalyzer packet contained (1) an ampoule certification signed by Arthur Helmuth, chemist II, Department of Public Safety Crime Laboratory, P.O. Box 6188, Annex, Anchorage, Alaska 99502 and, (2) a certification by Helen D. Beirne, Commissioner of Health and Social Services, that the Criminal Investigation Bureau Laboratory, Department of Public Safety, 5700 E. Tudor Road, Anchorage, Alaska, was approved to verify ampoules for breath testing but that no connection was established between Helmuth and the laboratory he served, and the laboratory approved by Commissioner Beirne. The state argues that these two laboratories are in fact one and the same. If Colvin is the custodian of the records listing authorized laboratories he may review them and, subject to Evidence Rules 1005 and 1006, state that he is the custodian of the records, that he has reviewed them, and certify that named laboratories appear in the public records as "approved laboratories" and that the laboratories in question are the same. The state can also introduce extrinsic evidence to show that the laboratory which employs Helmuth is in fact the same laboratory referred to in Beirne's certificate. *See* Evidence Rules 101(c), 104 and 1008. Finally, if it is established that Helmuth is employed by an authorized laboratory, then he could personally certify that he tested the ampoules in the course of his employment in compliance with 7 AAC 30.060. *See Keel,* 609 P.2d at 559 n. 12.

Therefore, we hold that the breathalyzer packet, subject to the foregoing modifications, satisfies the requirements of self-authentication under Evidence Rule 902(4). We caution the parties that our finding that the appropriately modified packet is admissible does not imply that the packet is unassailable. Our holding merely speaks to the preliminary foundational requirements of admissibility and does not preclude a substantive challenge to the factual findings of the packet. *See Keel,* 609 P.2d at 557.

Subject to these qualifications we REVERSE the order denying the admissibility of the breathalyzer packet and REMAND this case to the district court for further proceedings consistent with this opinion.

APPENDIX 1

# STATE OF ALASKA

**JAY S. HAMMOND, GOVERNOR**
WILLIAM R. NIX
Commissioner

## DEPARTMENT OF PUBLIC SAFETY
### DIVISION OF STATE TROOPERS

*P. O. BOX 6188, ANNEX*
*ANCHORAGE, ALASKA 99502*

Ampoule Manufacturer:     Smith & Wesson
                          Springfield, MA  01101

Ampoule Lot #:            774

Date of Analysis:         January 8, 1980

Ten (10) ampoules selected at random from Lot #774 were tested in accordance with 7 AAC 30.060 with the following results:

AMPOULE

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Volume in ml. | 3.00 | 3.00 | 3.00 | 3.03 | 3.01 | 3.04 | 3.00 | 3.00 | 3.01 | 3.03 |
| Specific Gravity+ | 1.53 | 1.53 | 1.52 | 1.52 | 1.53 | 1.53 | 1.53 | 1.52 | 1.53 | 1.53 |
| Presence of Sulfate | * | * | * | * | * | * | * | * | * | * |
| Presence of Chromate | * | * | * | * | * | * | * | * | * | * |
| Potassium Dichromate in mg% | 25.1 | 25.2 | 25.7 | 25.1 | 25.2 | 25.5 | 25.4 | 25.9 | 25.3 | 24.8 |

*Indicates the presence of listed component
+Indicates the presence of 50% Sulphuric Acid by volume

The above report indicates that this batch of ampoules from Lot #774 meet the specifications set by the manufacturer and are within the standard tolerances for Breathalyzer Solution for use in all Breathalyzers.

I, ARTHUR HELMUTH, do certify and attest that the above is a true copy of results obtained by me January 8, 1980.

*Arthur Helmuth*

Arthur Helmuth, Chemist II
Department of Public Safety
Crime Laboratory

SUBSCRIBED AND SWORN to before me this 9th day of January, 1980

Notary Public in and for Alaska
My Commission Expires: My Commission Expires
October 8, 1980.

I-L13LH

ATTACHMENT #4

## APPENDIX 2

BREATHALYZER INSTRUCTOR CERTIFICATION FOR CALIBRATION

The following person(s) have qualified under 7 AAC 30.040 as Borkenstein Breathalyzer instructors, and are qualified to perform calibration operations on the Breathalyzer, having successfully completed all Department of Health and Social Services programs necessary to attain this certification, as of

____ May 6, 1977 _____ .

NAME

    G. Scott Campbell

_Harry Colvin_

Harry J. Colvin, Ph.D.
Chief, Section of Laboratories
Division of Public Health
Department of Health & Social Services

## APPENDIX 3

BREATHALYZER CALIBRATION REPORT

...ment Serial Number _113186_     Date of Calibration _9-23-81_

...on Calibrating _S. Campbell_     Location _FAIRBANKS_

...y Operating _A.S.T._     Ampoule Control No. _774_

Output of Sample Chamber:

(a. Volume displaced: _52.5 ml._

(b) Piston drop time max/min. _30 Secs_

Temperature of Sample Chamber

(a) Time required to reach 50 C + 3:
_28 Mins._

(b) Maximum temperature reached:
_+51° C_

Photometer Centering & Balance, + _0 -0_

4. Photometer Backlash, + .005%: _+0 -0_

5. Operation Lights Property
Activate: _OK_

   (a) Red _OK_

   (b) Green _OK_

   (c) Ampoule Lamp _OK_

6. Strength of Control Solution _100%_

   (a) Results of the Four (4) tests made:

   1. _.101%_     3. _.101%_

   2. _.100%_     4. _.101%_

Remarks:

(a) _OPERATING W/IN MANUFACTURERS_

(b) _PRESCRIBED limits._

...reby certify that the specified instrument was calibrated on the date indicated above, ...ant to 7AAC 30.050 and performed within the tolerances specified by the manufacturer and is ...d to ascertain alcohol content of blood by chemical analysis of breath. I further certify ...t I am a qualified breathalyzer instructor and that I completed a course of study which ...lled or exceeded the instruction course offered by the Indiana University Department of Police ...inistration. The curriculum of that course complied with 7AAC 30.040(a)(2) and I satisfactori... ...sed written and practical examinations specified by 7AAC 30.040(a)(3) and have been qualified ... ...a breathalyzer instructor, authorized to calibrate, verify, and perform routine maintenance on ...athalyzer instruments by the Alaskan Department of Health and Social Services.

_____
Signature of Breathalyzer Instructor-Calibrato...

---

ATTESTATION OF OFFICIAL RECORD

...TE OF ALASKA )
         ) ss.
...RTH DISTRICT )

I, _G. Scott Campbell_ Alaska State Troopers, do hereby attest that the annexed ...ords of calibration of the breathalyzer Instrument for use in breath testing are true certifie... ...ies of the records of original entry on file in my office and in my custody.

...n IN WITNESS WHEREOF, I have hereunto set my hand at Fairbanks, Alaska this _23rd_ day of ...EPTEMBER., 198_1_.

_____
Alaska State Troopers

SUBSCRIBED AND SWORN to before me this _23rd_
day of _SEPTEMBER_ , 198_1_.

_Marie L. Flanagan_
Notary public in and for Alaska
My Commission Expires: _5/13/85_

## APPENDIX 4

STATE OF ALASKA
DEPARTMENT OF HEALTH AND SOCIAL SERVICES
POUCH H, JUNEAU
Division of Public Health

# CERTIFICATE AND PERMIT

No. __BA 2-79__                    Date __March 1, 1979__

This certificate and permit is granted to

CRIMINAL INVESTIGATION BUREAU LABORATORY
DEPARTMENT OF PUBLIC SAFETY

For operation of a

Chemical Laboratory for the Verification of the Chemical Composition
and Volume of Ampoules for the Breath Testing Procedure.

located at

5700 E. Tudor Road
Anchorage, Alaska

This certificate and permit is __Annual__, expires __February 7, 1980__, and
may be revoked at any time.
Issued under provisions of AS, Title 28, Motor Vehicles; and
AAC, Title 7, Health & Social services as amended or revised,
and other applicable State Laws and Regulations.

_Frank P. Pauls._
Division of Public Health
Section of Laboratories

_Helen D. Beirne_
Commissioner of Health and Social Services

This certificate and permit is not transferable and is the property
of the State of Alaska Department of Health and Social Services.

## APPENDIX 5

ALASKA DEPARTMENT OF HEALTH AND SOCIAL SERVICES
AT JUNEAU

### A U T H E N T I C A T E D   C O P Y

STATE OF ALASKA          )
                                 : SS.

FIRST JUDICIAL DISTRICT    )

           Pursuant to Civil Rule 44(b)(4), Rules of Civil Procedure,
Alaska Rules of Court, I hereby certify that I am Harry J. Colvin, Ph.
D, Chief, Section of Laboratories, Division of Public Health, and that
the annexed:

1.    Breathalyzer Operator Certification for Dennis Ponder

2.    Breathalyzer Calibration Report for Instrument #1131869, dated 7/22/81 & 9/23/81

3.    Instructor Certification for Instrument Calibrator G. Scott Campbell

4.    Certification of Ampoule Lot #774

5.    Certificate and Permit Criminal Investigation Bureau Laboratory

are true and correct copies of such documents which are in my legal custody
under the provisions of 7 AAC 30.010 et seq, and the facts stated therein
are true and correct.

          WITNESS my hand this 15th day of October , 1981

                                     Harry J. Colvin, Ph.D.
                                     Chief, Section of Laboratories
                                     Division of Public Health
                                     Department of Health and
                                        Social Services

          SUBSCRIBED AND SWORN to before me this day 15th of October , 1981

          (SEAL)
                                     Notary Public in and for Alaska
                                     My commission expires 7/21/85

          I, HELEN D. BEIRNE, Commissioner of Alaska Department of
Health and Social Services do hereby certify that Dr. Harry J. Colvin who
signed the preceding affidavit, is the duly appointed, qualified, and
acting Chief of the Section of Laboratories, Alaska Department of
Health and Social Services, and as such is the custodian of the records
of that office. That the signature to said affidavit is the genuine
signature of the Chief of the Section of Laboratories, and that the
affidavit is in due and proper form according to the laws of the State
of Alaska.

          IN WITNESS WHEREOF, I have hereunto set my hand and affixed
the seal of my office, at Juneau, Alaska, this 15th day of October ,
1981.

                                       Helen D. Beirne
                                       Commissioner, Alaska Department
                                        of Health and Social Services