903 P.2d 845

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eric RUIZ, Defendant–Appellant.**

No. 15832.

Court of Appeals of New Mexico.

Aug. 18, 1995.

Certiorari Denied Sept. 27, 1995.

Tom Udall, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender, David Henderson, Assistant Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

BLACK, Judge.

Defendant appeals his convictions for careless driving and driving while intoxicated. Defendant maintains that, in admitting the calibration log and printout of the Intoxilyzer 5000, the district court admitted impermissible hearsay, which in turn violated Defendant's constitutional right to confront his accusers. Based on our recent decision in *State v. Christian*, 119 N.M. 776, 895 P.2d 676 (Ct.App.), *cert. denied*, 119 N.M. 514, 892 P.2d 961 (1995), we disagree.

Defendant also argues that the district court erred in: (1) denying Defendant's motion to suppress evidence based on an illegal arrest, (2) failing to require the State to extrapolate the results of Defendant's breath test backward to the time of his arrest, (3) asking questions to establish the foundation for the breath tests, and (4) finding sufficient evidence to convict Defendant. Finding no error, we affirm.

## I. FACTS

Officer Byers testified that he was stopped at a traffic light on Louisiana Boulevard in Albuquerque when he saw a car approaching from behind. The car was weaving into another lane and the median. Officer Byers testified that he was afraid the car would hit him because it was moving too fast to stop at the light. When the light changed, Officer Byers engaged his emergency equipment and attempted to pull the car over to the curb. He followed the car for approximately four blocks before it finally pulled over and stopped. During this pursuit, the car continued to weave. When Officer Byers approached the driver, he noticed that the driver had watery, bloodshot eyes, smelled of alcohol, and had slurred speech. When Officer Byers asked the driver if he had been drinking, the driver responded affirmatively. Officer Byers called a member of the Driving While Intoxicated (DWI) Unit to continue the investigation. In court, Officer Byers identified the driver of the car as Eric Ruiz, although he indicated that Ruiz had given him a false name at the scene.

The DWI Unit officer, Officer Martinez, testified that, when he arrived at the scene, he also smelled "the odor of alcohol on [Ruiz's] breath" and noticed that Ruiz had bloodshot, watery eyes. Officer Martinez administered field sobriety tests that produced mixed results. Officer Martinez then transported Defendant to the Breath Alcohol Testing Unit. Approximately fifty minutes after he was first stopped, Defendant was given a breath test on an Intoxilyzer 5000 machine.

At trial, Officer Martinez testified that he was certified to administer a blood-alcohol test using the Intoxilyzer 5000 and described the procedure used in administering the test. Officer Martinez further testified that, on the night in question, the Intoxilyzer 5000 appeared to be working properly and he followed the proper procedure in administering the test to Defendant.

After a defense objection that Officer Martinez was not qualified to testify that the machine was properly calibrated, the State called Mr. Walton, a forensic scientist employed by the Albuquerque Police Department (APD) Criminalistics Section. Mr. Walton testified that, in addition to holding a master's degree in biology, he had been test-

ed and certified by the Scientific Laboratory Division of the New Mexico Department of Health (SLD) as both a key operator and an instructor on the Intoxilyzer 5000. One of his duties, along with the other APD scientists, was to check and calibrate the APD's Intoxilyzer 5000 machines on a weekly basis. Mr. Walton further testified that the calibration immediately prior to Defendant's arrest had been performed by another APD scientist, Mr. Atencio, whom Mr. Walton had trained. Based on the testimony of Officer Martinez and Mr. Walton, and over defense counsel's objections, the district court admitted the Intoxilyzer 5000 breath-alcohol printout and calibration log into evidence. The printout indicated that Defendant had a blood-alcohol content of 0.15% at the time of the test.

## II. *STANDARD OF REVIEW*

 The admissibility of an extrajudicial statement as an exception to the hearsay rule, SCRA 1986, 11–802 (Repl.1994), is reviewed for abuse of discretion. *State v. Johnson,* 99 N.M. 682, 687, 662 P.2d 1349, 1354 (1983). The hearsay rule is, however, not coextensive with the Confrontation Clauses of the New Mexico and United States Constitutions, U.S. Const. amend. VI; N.M. Const. art. II, § 14. Thus, this Court should review Confrontation Clause problems separate from the question of admissibility under hearsay rules. *State v. Martinez,* 99 N.M. 48, 51, 653 P.2d 879, 882 (Ct.App.), *cert. denied,* 99 N.M. 47, 653 P.2d 878 (1982). The question of whether out-of-court statements are admissible under the Confrontation Clause is a question of law, subject to *de novo* review. *State v. Gallegos,* 109 N.M. 55, 65–66, 781 P.2d 783, 793–94 (Ct.App.), *cert. denied,* 108 N.M. 771, 779 P.2d 549 (1989).

## III. *THE CALIBRATION LOGS WERE ADMISSIBLE AS BUSINESS RECORDS*

 Defendant argues that the calibration logs, and consequently the printout from the Intoxilyzer 5000, should have been excluded as inadmissible hearsay. The State maintains that such logs come within the business records exception to the hearsay rule, SCRA

1986, 11–803(F) (Repl.1994). We agree with the State.

Mr. Walton testified that the SLD had jurisdiction over APD's Criminalistics Laboratory (Laboratory), and that SLD therefore certified the Laboratory's instruments and personnel, and provided "proficiency samples" for the calibration of the machines. Every week, the APD scientists run the SLD samples through the Laboratory's instruments and return the samples for a determination of how the instruments are operating. Mr. Walton also testified that the Laboratory calibrates the Intoxilyzer 5000 machines "in accordance with SLD regulations." He testified that SLD requires the Laboratory to maintain a logbook of the weekly calibration check results and that the Laboratory maintains such a logbook in the ordinary course of business.

We recently confronted the identical argument under similar circumstances in *State v. Christian,* 119 N.M. 776, 895 P.2d 676 (Ct. App.), *cert. denied,* 119 N.M. 514, 892 P.2d 961 (1995). In *Christian,* we pointed out that the business records exception to the prohibition against hearsay is "premised upon routine, trusted patterns of record generation and the confidence engendered by showing that a particular record is created and maintained in conformity with that routine." *Id.* at 779, 895 P.2d at 679. We also noted that "these [blood-alcohol] reports share many of the characteristics noted in the federal Advisory Committee Note [for Federal Rule of Evidence 803] of systematic checking, regularity, continuity, habits of precision, actual experience of reliance, and a duty of accuracy." *Id.* at 780, 895 P.2d at 680. We concluded that the blood-alcohol reports in that case, which were also prepared by SLD-trained operators, were sufficiently reliable to fall within the criteria of the business records exception. *Id.* at 780–81, 895 P.2d at 680–81. Other appellate courts, consistent with *Christian,* have held that periodic breathalyzer calibration reports fall within the local version of the business or public records exceptions to the hearsay rule. *See, e.g., Best v. State,* 328 A.2d 141, 143 (Del.1974); *People v. Black,* 84 Ill.App.3d 1050, 40 Ill.Dec. 322, 324–25, 406 N.E.2d 23,

24–25 (1980); *Brouillette v. State, Dep't of Public Safety,* 589 So.2d 529, 533 (La.Ct.App. 1991); *State v. Mendieta,* 20 Ohio App.3d 18, 484 N.E.2d 180, 182–83 (1984); *Brown v. State,* 584 P.2d 231, 233 (Okla.Crim.App. 1978).

Nevertheless, Defendant contends: "While *Christian* may establish that a 'scientific report' is not always inadmissible in a criminal trial, Mr. Ruiz respectfully submits that *Christian* should not be read to suggest that such reports are always admissible." We agree that *Christian* should not be construed so broadly. Nor do we necessarily disagree with Defendant's assertion that a "very real risk of unreliability arises when 'public' records are prepared in an adversary setting in preparation for litigation." Whatever the general validity of this assertion, however, we are not persuaded that it is relevant in the present context.

Initially, we note that the SLD has a wide variety of scientific devices that are routinely checked and maintained, and that the scientists calibrating these devices do not report on the results with an eye toward litigation. Moreover, proper calibration of a breath-alcohol machine is as likely to result in a suspect being exonerated as incriminated. Suspects who test below a standard level on a properly calibrated machine are not routinely charged with driving while intoxicated. Thus, a calibration log cannot be said to be "prepared in an adversary setting in preparation for litigation." In *State v. Huggins,* 659 P.2d 613 (Alaska Ct.App.1982), the Alaska Court of Appeals enunciated a similar rationale in upholding the admission of certification and calibration records of a breathalyzer:

> The factual findings included in the records that comprise the breathalyzer packet are compiled in the regular course of business by government officials in advance of any specific case in which the breathalyzer tested will be used. An official would have no motive to misrepresent those facts because the nexus between his findings and a particular result on a particular prosecution is too attenuated. Since the person certifying the machine has no knowledge of

a specific case, he has no incentive to misrepresent.

*Id.* at 616.

This leads to Defendant's second avenue for distinguishing *Christian.* Defendant argues that the law enforcement limitations of SCRA 1986, 11–803(H)(2) (Repl.1994), barred admission of the calibration logs because the logs report "matters observed by police officers and other law enforcement personnel." *Id.* While this limitation is raised under the public records provision of the hearsay rule, like the rest of this discussion, it applies to the business records exception as well. *See State v. Ward,* 15 Ohio St.3d 355, 474 N.E.2d 300, 302 (1984).

■ In response to Defendant's contention we must note that *Christian* rejected the same argument with regard to a blood test conducted directly by SLD personnel. *Christian,* 119 N.M. at 781–82, 895 P.2d at 681–82. Defendant argues, "Walton acknowledged that the employees of the criminalistics section were 'law enforcement personnel' and that the Intoxilyzers were used in the 'investigation' of DWI cases." While this is one interpretation of the evidence, it is not the one adopted by the district court and thus not the appropriate interpretation for this Court on appeal. *See State v. Anderson,* 107 N.M. 165, 168, 754 P.2d 542, 545 (Ct.App. 1988) (the question on appeal is whether the trial court decision is supported by substantial evidence, not whether the trial court could have reached a different result).

■ The district court here found that Mr. Walton and the other forensic scientists employed at the APD Laboratory were not law enforcement employees or personnel. Defendant has not specifically challenged that finding and it is therefore presumed to be correct. *See Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). Moreover, substantial evidence supports the district court's finding that Mr. Walton, Mr. Atencio, and the third unnamed forensic scientist who regularly conducted calibration checks on the Intoxilyzer 5000 did not attend the law enforcement academy, did not carry badges, and were not sworn police officers. Rather, the record is clear that these scien-

tists were civilian employees of the City of Albuquerque (City), were supervised by a civilian, and were separate and distinct from the City's sworn law enforcement officers.

Second, even if we were to ignore the district court's finding, Defendant provides no direct evidence to support his contention that the scientists were part of the "prosecutorial team." The evidence in this case established that the entries in the calibration log were made by a scientist who was routinely checking the calibration of each Intoxilyzer 5000 to insure that each machine was operating properly. As previously noted, this is not an adversarial activity.

Courts in other jurisdictions have considered the law enforcement limitation on the business or public records exceptions. These courts generally have ruled that language patterned on Federal Rule of Evidence 803(8) "does not prohibit introduction of records of a routine, intra-police, or machine maintenance nature, such as intoxilyzer calibration logs." *Ward*, 474 N.E.2d at 302; *see United States v. Wilkinson*, 804 F.Supp. 263, 266–67 (D.Utah 1992); *Huggins*, 659 P.2d at 616. In affirming the admission of certificates indicating routine breathalyzer inspections by police personnel, the Oregon Court of Appeals outlined the parameters of the law enforcement limitations and the hearsay rule:

> We conclude that, in adopting [Federal Rule of Evidence] 803(8)(B), Congress did not intend to change the common law rule allowing admission of public records of purely "ministerial observations." Rather, Congress intended to prevent prosecutors from attempting to prove their cases through police officers' reports of their observations during the investigation of crime.
>
> . . . . .
>
> [T]he certificates of breathalyzer inspections do not concern observations by the police officers in the course of a criminal investigation. Rather, they relate to the routine function of testing breathalyzer equipment to insure that it gives accurate readings. *See United States v. Grady, supra*, 544 F.2d [598] at 604. The testing and certification under [Oregon Revised

Statute] 487.815(3)(c) is not done in the adversarial context of a particular case that might cloud law enforcement personnel's perception. A review of the congressional debate reveals that [Federal Rule of Evidence] 803(8)(B) was intended to preclude only the admission of police reports made in the course of investigation of a particular crime in lieu of the officers' in court testimony, not records of routine, nonadversarial matters such as those in question here.

*State v. Smith*, 66 Or.App. 703, 675 P.2d 510, 512 (1984).

### IV. ADMISSION OF THE CALIBRATION LOGS DID NOT DENY DEFENDANT HIS RIGHT TO CONFRONT WITNESSES

■ Defendant next argues that introduction of the calibration logs violated his federal and state constitutional right to confront Mr. Atencio, the person who actually calibrated the Intoxilyzer 5000 machine used for Defendant's test. U.S. Const. amend. VI; N.M. Const. art. II, § 14. Once again, we rejected this argument on virtually identical facts in *State v. Christian*, 119 N.M. 776, 895 P.2d 676 (Ct.App.), *cert. denied*, 119 N.M. 514, 892 P.2d 961 (1995).

In *Christian*, an SLD chemist, Mr. Gallegos, extracted the defendant's blood samples from a vial and performed the blood-alcohol tests. *Id.* at 778, 895 P.2d at 678. At trial, however, the State called Mr. Gallegos' supervisor, Dr. Robb, to explain the tests and lay the factual foundation for their admission. *Id.* Mr. Christian argued that his lack of an opportunity to cross-examine the person who actually performed the tests deprived him of his right to confrontation. *Id.* at 782, 895 P.2d at 682. In *Christian*, we noted that the first requirement for admission of a test in the absence of the person who performed the test, reliability, had been established under the business records exception. *Id.* That is also true in the case at bar.

The second requirement of the Confrontation Clause is necessity. U.S. Const. amend. VI; N.M. Const. art. II, § 14; *see Christian*, 119 N.M. at 782, 895 P.2d at 682. The

*Christian* decision recognized that, although the Confrontation Clause normally requires the State to produce the declarant or demonstrate his unavailability, this requirement can be excused when:

> (1) the utility of cross-examination as to the particular records is minimal or remote; (2) the other evidence at trial affords defendant an adequate opportunity to test the reliability of the records; or (3) public policy considerations otherwise excuse the prosecution from producing the out-of-court declarant or showing his or her unavailability.

*Christian*, 119 N.M. at 782–83, 895 P.2d at 682–83 (quoting *State v. Austin*, 104 N.M. 573, 575–76, 725 P.2d 252, 254–55 (Ct.App. 1985), *cert. quashed*, 104 N.M. 632, 725 P.2d 832 (1986)).

Relying on these factors, we found a sufficient basis to allow admission of the blood tests through the supervisor of the person actually performing the test in *Christian* and we do so here as well. *Id.* at 783, 895 P.2d at 683. In *Christian*, we sustained the admission of the blood-alcohol test without proof of the unavailability of Mr. Gallegos, noting that "the gas chromatograph test was purely mechanical." *Id.* We further pointed out that Dr. Robb testified from personal knowledge "about the testing procedure and the manner in which the Gallegos report was compiled and was available for cross-examination into these matters." *Id.* We concluded that "the 'utility of cross-examination' was 'minimal' in regard to a personal appearance by Gallegos." *Id.* We can substitute the name of Mr. Walton for that of Dr. Robb, and Mr. Atencio for Mr. Gallegos, and the observations in *Christian* lead to the same conclusion in the case at bar.

The contention that the admission of a breathalyzer calibration certificate, in the absence of live testimony from the technician who performed the test, violates a defendant's right to confront his accusers has been repeatedly rejected in other jurisdictions. *See, e.g., United States v. Wilmer*, 799 F.2d 495, 501–02 (9th Cir.1986), *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1626, 95 L.Ed.2d 200 (1987); *State v. Huggins*, 659 P.2d 613, 616 (Alaska Ct.App.1982); *State v. Jensen*, 351 N.W.2d 29, 32–33 (Minn.Ct.App.1984); *State v. Conway*, 70 Or.App. 721, 690 P.2d 1128, 1129 (1984), *review denied*, 298 Or. 704, 695 P.2d 1371 (1985); *cf. State v. King*, 187 Conn. 292, 445 A.2d 901, 909–12 (1982) (toxicology tests); *State v. Van Sickle*, 120 Idaho 99, 813 P.2d 910, 913–14 (1991) (breathalyzer printout). In *State v. Smith*, 312 N.C. 361, 323 S.E.2d 316 (1984), the North Carolina Supreme Court wrote a lengthy opinion systematically rejecting the defendant's challenges to the admission of a chemist's affidavit as evidence of the defendant's blood-alcohol content. In rejecting the argument that introduction of the test results without providing the defendant a chance to cross-examine the chemist violated the Confrontation Clause, the North Carolina court first noted "that in reality the 'witness' against the defendant, the source of the crucial and incriminating evidence, is not the analyst, but the machine itself." *Id.* 323 S.E.2d at 323. Outlining a rationale similar to that underlying our decision in *Christian*, 119 N.M. at 783, 895 P.2d at 682–83, the North Carolina court concluded:

> It is unlikely in cases such as the case before us that cross-examination of the chemical analyst at trial could "successfully call into question the declaration's apparent meaning or the declarant's sincerity, perception or memory." Rather, to require every analyst to testify in such cases would be "unduly inconvenient and of small utility." *Dutton v. Evans*, 400 U.S. [74] at 96, 91 S.Ct. [210] at 223 [27 L.Ed.2d 213 (1970)] (Harlan, J. concurring). As Justice Harlan concluded in *Dutton*, "[i]f the hearsay exception involved in a given case is such as to commend itself to reasonable men, production of the declarant is likely to be difficult, unavailing, or pointless." *Id. See United States v. Yakobov*, 712 F.2d 20 (2d Cir.1983). When we consider the nature of the evidence—a well recognized scientifically designed test for determining blood alcohol concentration—together with the duty of the analyst to follow carefully delineated guidelines in conducting the test and the objective nature of the facts recorded, both the need for *and* the utility of confrontation at trial in District Court appear minimal.

*Smith,* 323 S.E.2d at 324 (alteration in original).

## V. *OTHER ISSUES*

Defendant argues, pursuant to *State v. Franklin,* 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer,* 103 N.M. 655, 658, 712 P.2d 1, 4 (Ct.App.1985), that the district court committed other errors that require reversal. We briefly discuss these issues.

### A. *There Was Reasonable Suspicion to Stop Defendant and Probable Cause to Arrest Him*

 Based on his observations of Defendant's car weaving as it approached, Officer Byers had sufficient cause to stop Defendant. Officer Byers' further observation that Defendant was weaving for four blocks while the officer attempted to pull him over to the curb, combined with Defendant's strong odor of alcohol, glassy eyes, and inability to perform all of the sobriety tests in a satisfactory fashion, provided probable cause for the arrest. *See State v. Trujillo,* 85 N.M. 208, 211, 510 P.2d 1079, 1082 (Ct.App.1973).

### B. *There Is Sufficient Evidence to Sustain Defendant's Conviction*

 In addition to the facts that provided probable cause for Defendant's arrest, the Intoxilyzer 5000 printout provided evidence that Defendant's blood-alcohol content was 0.15. The results of a breath test may be introduced into evidence in an action based on a criminal charge of driving a motor vehicle while under the influence of intoxicating liquor. NMSA 1978, § 66–8–110 (Repl. Pamp.1994). Although it is not entirely clear, it appears that Defendant may suffer from a fundamental misunderstanding regarding the State's burden to prove that the Intoxilyzer 5000 machine that produced this result was reliable. Once Officer Martinez testified that he was very familiar with the Intoxilyzer 5000 and that it appeared to be working properly on the evening in question, the test results were validated. The State also introduced Exhibit 2, which indicated the machine in question had been calibrated within seven days of Defendant's test. This calibration certificate reinforces the inference that the test results were reliable. *See Commonwealth v. Sloan,* 414 Pa.Super. 400, 607 A.2d 285, 293–94 (1992). Defendant could have then introduced evidence to contradict the inference of reliability or to otherwise prove his sobriety. *See* § 66–8–110(F); *Sloan,* 607 A.2d at 294. This, Defendant failed to do. *See State v. Jacobs,* 102 N.M. 801, 805, 701 P.2d 400, 404 (Ct.App.1985) (argument of counsel not evidence).

 In any event, it is clear that the decision of the district court did not rest upon the calibration certificate. In rendering his decision, the district judge said: "The next issue, is whether or not at the time he was operating or driving that motor vehicle he was under the influence of intoxicating liquor. I find that he was, even without considering the breath test card." After then summarizing the evidence regarding Defendant's driving, his appearance when stopped, his performance on the field tests, his admission regarding alcohol consumption, and his attempt to conceal his identity, the district judge concluded that, based on

> the total, together with reasonable inferences, ... I find, beyond a reasonable doubt, that he was operating a motor vehicle while under the influence of intoxicating liquor, and it affected him such that he was not able to exercise the steady hand and clear judgment to operate a motor vehicle safely.

> That's without considering Exhibit 1. If I do consider Exhibit 1, then what was a close case before now becomes a now rather clear case even further beyond a reasonable doubt of driving while intoxicated.

The allegation that the State may not rely on the breath test because the test was taken fifty minutes after the arrest is answered by *State v. Cavanaugh,* 116 N.M. 826, 829–30, 867 P.2d 1208, 1211–12 (Ct.App.1993), *cert. denied,* 117 N.M. 121, 869 P.2d 820 (1994).

### C. *The District Court Did Not Err in Questioning Mr. Walton*

In response to questions by the court, Mr. Walton testified that he was one of the authorized custodians of the calibration logbook; that Mr. Atencio was his co-worker;

and that he had trained Mr. Atencio to use the Intoxilyzer 5000, to make the standard control solutions, to use the gas chromatograph, and to test blood-alcohol samples. Mr. Walton further responded that he was not a law enforcement officer; did not carry a badge; had not completed the law enforcement academy; did not supervise or direct any law enforcement officers in the performance of their duties; was a City employee in the APD Criminalistics Section; and that the Laboratory director was a civilian.

Defendant apparently claims that some or all of the questions by the district judge were inappropriate. We disagree. *See State v. Stallings,* 104 N.M. 660, 663, 725 P.2d 1228, 1231 (Ct.App.), *cert. denied,* 104 N.M. 632, 725 P.2d 832 (1986); *State v. Sedillo,* 76 N.M. 273, 275–76, 414 P.2d 500, 501–02 (1966).

## VI. *CONCLUSION*

Defendant's conviction is affirmed.

**IT IS SO ORDERED.**

PICKARD and BOSSON, JJ., concur.