This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.                                                                                    **NO. 28,874**

**BRUCE PETERSON,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Matthew G. Reynolds, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bradburn Law Office, LLC
Matthew Bradburn
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Defendant appeals the district court's entry of judgment and sentence finding him guilty of DWI (first offense), contrary to NMSA 1978, Section 66-8-102(E) (2008), and possession of alcoholic beverages in open containers in a motor vehicle, contrary to NMSA 1978, Section 66-8-138(A) (2001). We affirm.

**BACKGROUND**

Defendant pled guilty in magistrate court to three charges: DWI (first offense), possession of alcoholic beverages in open containers in a motor vehicle, and speeding. He filed a de novo appeal to district court. At trial, the State relied primarily on the testimony of the arresting officer and a videotape of the incident. The district court dismissed the speeding violation but found Defendant guilty of DWI and the open container violation. Defendant challenges his convictions on two grounds. First, he contends that the officer lacked probable cause to arrest him for DWI. Second, Defendant claims that the district court erred in admitting his breath alcohol test (BAT) results. We address each issue in turn. Additional facts will be discussed in the context of the issues raised by Defendant.

**DISCUSSION**

**1.    Probable Cause**

Defendant challenges the district court's probable cause determination. "An officer has probable cause to arrest when the facts and circumstances within the

officer's knowledge are sufficient to warrant the officer to believe that an offense has been or is being committed." *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 9, 143 N.M. 455, 176 P.3d 1187 (filed 2007). "An officer does not have to observe a suspect actually driving in an impaired manner if the officer, based upon all the facts and circumstances, has reasonable grounds to believe that [the driver] had been driving while intoxicated." *State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446 (internal quotation marks and citation omitted). "Our probable cause inquiry is whether it was objectively reasonable for the officer to believe that Defendant had been driving while he was to the slightest degree impaired, that is, unable to exercise the clear judgment and steady hand necessary to handle a vehicle in a safe manner." *Granillo-Macias*, 2008-NMCA-021, ¶ 9 (internal quotation marks and citation omitted). "We judge reasonableness by an objective standard, mindful that probable cause requires more than a suspicion, but less than a certainty." *Sanchez*, 2001-NMCA-109, ¶ 11 (internal quotation marks and citation omitted). In reviewing the evidence supporting probable cause, "[e]ach case stands on its own facts; there is no one set of circumstances required for probable cause." *Id.* ¶ 12.

With the foregoing principles in mind, we turn to the underlying facts, viewing them in the light most favorable to the State. *See State v. Lopez*, 2005-NMSC-018, ¶ 9, 138 N.M. 9, 116 P.3d 80 ("The standard of review for suppression rulings is

whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." (internal quotation mark and citations omitted)).

At trial, Officer Dean Carroll testified about the stop as follows. He stopped Defendant for speeding at approximately 12:55 a.m. on March 8, 2007, after observing him going 64 miles per hour in a 55 mile per hour zone. Defendant had "a difficult time" pulling to the side of the road and appeared to be putting something in the back seat. Officer Carroll "immediately" smelled alcohol when Defendant rolled down his window, and also noticed an open bottle of beer in the back seat. Defendant then fumbled with the papers he was asked to retrieve. Defendant admitted to drinking, stating that he had two beers at the Hilton Hotel. Defendant stumbled as he got out of the car and had to hold onto the vehicle as he approached the officer. The shoulder of the road where this took place had no obstructions that would have caused Defendant to stumble.

Officer Carroll then asked Defendant to perform field sobriety tests (FSTs), beginning with the Walk and Turn (WAT) test. Officer Carroll stated that he decided to conduct the tests based on the smell of alcohol, the admission to drinking, the open beer bottle, the inability to follow instructions, and dropping his paperwork. Officer Carroll had already made the decision to arrest Defendant by the time the FSTs took place. He stated that Defendant had a hard time maintaining his balance during the

4

WAT test and the One-Legged- Stand (OLS) test. Defendant objected to reliance on these FSTs, referring to language in the National Highway Transportation Safety Administration (NHTSA) manual indicating that different tests should be used on people over sixty-five years of age; Defendant was sixty-seven at the time. Officer Carroll read this portion of the NHTSA manual after being asked to do so by Defendant, including language that the failure to use different tests (which appear to be less physical) could compromise the accuracy of the tests. The State had already stipulated that the officer did not follow the exact procedures of the manuals on this matter.

In ruling on the probable cause issue, the district court, sitting as factfinder, accepted the fact that Officer Carroll did not utilize the FSTs he could have. Additionally, the court expressed doubts about some of the tests. The court noted, for example, that it was discounting the OLS test and would not hold Defendant's performance against him. In concluding that Officer Carroll had probable cause of DWI, the district court based its determination on Officer Carroll's testimony and the videotape of the incident, specifically: (1) slurred speech; (2) the smell of alcohol on Defendant's breath; (3) stumbling during the middle of the WAT test (although the judge discounted any problems with the completion of the test at the end, presumably in response to the technical challenge to the FSTs); and (4) Defendant's repeatedly

5

telling Officer Carroll that he had been to the Hilton, which gave the impression that Defendant had already told Officer Carroll this information.

We agree that the facts ultimately relied on by the district court supplied probable cause for Defendant's arrest. *See, e.g.*, *Granillo-Macias*, 2008-NMCA-021, ¶ 12 (holding that the odor of alcohol, lack of balance at the vehicle, and failure to satisfactorily perform FSTs supported an objectively reasonable belief that the defendant had been driving while intoxicated, and thus constituted probable cause to arrest); *State v. Ruiz*, 120 N.M. 534, 535, 540, 903 P.2d 845, 846, 851 (Ct. App. 1995) (holding that probable cause existed where police observed the defendant speeding and weaving, where the defendant admitted to having been drinking, when the officer noticed bloodshot, watery eyes, slurred speech, and a smell of alcohol, and when the results of the FSTs were mixed), *abrogated on other grounds by State v. Martinez*, 2007-NMSC-025, 141 N.M.713, 160 P.3d 894; *State v. Jones*, 1998-NMCA-076, ¶ 10, 125 N.M. 556, 964 P.2d 117 (concluding that the officer had probable cause to arrest for DWI when the officer noticed bloodshot, watery eyes, slurred speech, and a strong odor of alcohol, when the defendant admitted to having drunk two beers, swayed when he was talking to the officer, and failed the FSTs). To the extent that Defendant is arguing that his physical actions at the scene could have been caused by something other than intoxication, such as darkness or his age, we defer to the district

court's factual determinations under our standard of review. *See State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993) (noting that the appellate court does not substitute its judgment for that of the factfinder).

Defendant's primary argument with respect to the probable cause issue is that the district court could not rely on the FSTs because they were not the type of FSTs that should have been administered to an individual his age. The NHTSA manual itself was not entered into evidence. As a result, the State argues that we may not consider it on appeal. *See Granillo-Macias*, 2008-NMCA-021, ¶ 11 (declining to consider a strict compliance argument based on the NHTSA manual when the defendant failed to introduce the manual in evidence). We note that, unlike *Granillo-Macias*, Officer Carroll incorporated the relevant portion of the NHTSA manual into the record through his testimony and, as mentioned above, the State stipulated that Officer Carroll did not follow the exact procedures of the manual. We therefore consider the FSTs challenge in the context of the district court's reliance on this evidence and the availability of independent evidence to support the probable cause finding. We consider the fact that in response to Defendant's arguments, the district court expressly dismissed the OLS test. As to the WAT test, the district court judge specifically discounted any problems Defendant had at the end of the test; instead, the district court noted that Defendant stumbled as he walked in the middle

7

of the straight line. The district court was not relying on any conclusions to be drawn from any technical aspect of this test, but was instead simply observing the fact that Defendant was having difficulty maintaining his balance, which was consistent with Officer Carroll's earlier observations of Defendant's imbalance prior to any testing. We therefore conclude that the district court did not commit error in relying on these observations.

**2.      Admission of BAT**

Defendant also challenges the denial of his motion to suppress the results of a BAT. According to Defendant, the State failed to demonstrate general compliance with the ascertainment element of the applicable New Mexico Scientific Laboratory Division (SLD) regulations. We consider whether foundation prerequisites were met pursuant to Rule 11-104(A) NMRA. *See Martinez*, 2007-NMSC-025, ¶ 19 (holding that the district court "need only be satisfied by a preponderance of the evidence that the foundational requirement has been met"). Again, when reviewing the denial of a motion to suppress, we must view the facts in the light most favorable to the ruling rendered below, indulge all reasonable inferences in support thereof, and disregard all evidence and inferences to the contrary. *Lopez*, 2005-NMSC-018, ¶ 9.

Defendant's briefs in this appeal are based on a then-controlling opinion rendered by this Court in the case of *State v. Willie*, 2008-NMCA-030, 143 N.M. 615,

8

179 P.3d 1223 (filed 2007). The New Mexico Supreme Court subsequently granted the defendant's petition for writ of certiorari in *Willie* and reversed the decision of this Court. *State v. Willie*, 2009-NMSC-037, 146 N.M. 481, 212 P.3d 369. In light of the Supreme Court's reversal of this Court's decision in *Willie*, we conclude that the district court did not err in admitting the results of the BAT.

The SLD regulation which is applicable in the present case requires the individual administering the test to ascertain that the subject has not had anything to eat, drink, or smoke for at least twenty minutes prior to collection of the sample. 7.33.2.12(B)(1) NMAC (3/14/01). The Supreme Court held that compliance with this requirement may be accomplished "by using a variety of means . . . on an individualized, case-by-case basis," and that this requires a factual determination that has been committed to the discretion of the trial court. *Willie*, 2009-NMSC-037, ¶¶ 12, 14, 16.

In *Willie*, there were two defendants who appealed from separate incidents. The defendant Willie was arrested, handcuffed, and placed in the patrol car. *Id.* ¶ 4. Prior to the test being administered, he was either in the patrol car or was face to face with the officer in the testing room. *Id.* The arresting officer also conversed with Willie. *Id.* Based on the above, the officer testified that Willie did not eat, drink, or smoke anything between the arrest and the test. *Id.* In defendant Julian's case, similar facts

were presented. *Id.* In neither case did the officers check the defendant's mouth, and the record also did not indicate whether they were asked if they had anything in their mouths. *Id.* ¶¶ 4, 5. The Supreme Court affirmed the admission of the breath tests under these facts. *Id.* ¶ 18. Although Defendant believes that a "continuous observation requirement" exists, the Supreme Court's opinion in *Willie* makes clear that this is only one of numerous alternative ways of satisfying the regulation. *Id.* ¶ 12.

In the present case, Defendant was handcuffed at 1:03 a.m., and the two breath tests were administered beginning at 1:49 a.m. Officer Carroll testified that he checked Defendant's mouth and noted that there was no food, smoke, tobacco, or any smell other than alcohol before placing Defendant in a secure "cage" in the back of his police car. Officer Carroll provided the following additional testimony regarding the events that occurred after the arrest. Officer Carroll checked Defendant's pockets, which were empty except for a wallet and keys. The back seat of the police car was clean with no food or water present. Defendant was in the secure area of the patrol car "way over" the twenty-minute deprivation period while Officer Carroll transported him to the Moriarty Police Department, where the tests were administered upon arrival. Officer Carroll checked Defendant's mouth for a second time prior to administering the test.

This evidence was sufficient to support the district court's discretionary, factual determination that Officer Carroll complied with the applicable regulation. *See id.* ¶¶ 12, 16 (holding that the ultimate question whether the SLD regulation has been satisfied "is a factual determination to be made by the trial court" in its discretion). In light of the testimony concerning the lack of any food or beverage in the back of the patrol car, we are unpersuaded that it mattered that Defendant was handcuffed in the front of his body, as opposed to the defendants in *Willie*, who were handcuffed with their hands behind them. In addition to facts similar to those found sufficient in *Willie*, the district court's determination was also bolstered by Officer Carroll's testimony that he twice checked Defendant's mouth, first at the time of arrest and then just prior to administering the test.

Finally, we disagree with Defendant's characterization of the deprivation period. Defendant argues that the deprivation period is based on a period of continuous observation "that is, the period of time during which [Officer Carroll] remained in [Defendant's] presence." Based on this, Defendant contends that the deprivation period began at 1:32 a.m. when Officer Carroll came back to his patrol car after doing paperwork on the towing of Defendant's vehicle. This, Defendant argues, would invalidate the first of the two breath tests, which was taken at 1:49 a.m., a few minutes shy of the twenty-minute requirement. *See* 7.33.2.12(B)(1) NMAC.

11

However, as the State points out, Defendant had been handcuffed and placed in the patrol car at 1:03 a.m., and Officer Carroll testified that this is when he commenced the deprivation period. While it is true that Officer Carroll was with Defendant for an uninterrupted period beginning at 1:32 a.m., this argument was advanced in the context of Defendant's claim that there had to be a continuous observation period, a claim rejected by *Willie*. 2009-NMSC-037, ¶ 14 (holding that "the SLD intended to allow [BAT] operators to determine that a subject has not had anything to eat, drink, or smoke by using a  variety of means at his or her disposal, including observation, on an individualized, case-by-case basis"). Therefore, pursuant to *Willie*, we conclude that the twenty-minute deprivation requirement was satisfied in this case.

In light of our conclusion that no error in the admission of the breath tests occurred, we do not need to reach Defendant's harmless error argument.

**CONCLUSION**

For the reasons set forth above, we affirm.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

12

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**ROBERT E. ROBLES, Judge**